JIMMY L. SWAGGART AND FRANCES O. SWAGGART, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Swaggart v. Commissioner
Docket No. 29589-81.
United States Tax Court
T.C. Memo 1984-409; 1984 Tax Ct. Memo LEXIS 270; 48 T.C.M. (CCH) 759; T.C.M. (RIA) 84409; August 1, 1984. David Bruce Spizer, for the petitioners. Deborah R. Jaffe, for the respondent. KORNER
MEMORANDUM OPINION KORNER, Judge: Respondent determined deficiencies in *271 petitioners' income tax for their calendar years 1976 and 1977 in the amounts of $700 and $824. After concessions, the sole issue which we must decide is whether certain amounts paid to petitioner Jimmy L. Swaggart in the years in issue are excludable from his gross income under the provisions of section 107. [1] The case was submitted to the Court on a fully stipulated set of facts under Rule 122, and the facts are found accordingly. Petitioners Jimmy L. Swaggart (hereinafter "petitioner") and Frances O. Swaggart are individuals who, during the years in issue and at the time the petition herein was filed, were residents of Baton Rouge, Louisiana. Their joint income tax returns were filed on the calendar year basis for the years 1976 and 1977. Petitioner is an ordained minister of the Gospel and, during the years in question, was a salaried official of the Jimmy Swaggart Evangelistic Association (hereinafter "JSEA"), which has been recognized by respondent *272 as a religious organization within the meaning of section 501(c)(3). In 1967, petitioners purchased a lot at 1269 Tara Boulevard in Baton Rouge, Louisiana, and built their home there. Construction was completed in 1968, and, with a subsequent addition in 1969, the total cost of land and building was $60,000, all of which was paid for by petitioners with their own funds. From the time of acquisition and through the years in question, there was no mortgage indebtedness on petitioners' residence. In the years 1976 and 1977, JSEA, pursuant to an appropriate corporate resolution, paid various amounts for items in or relating to petitioners' residence, such as insurance, utilities, maintenance and repair and appliances for the home. Such amounts totaled $9,530.56 in 1976 and $3,372.44 in 1977. Such amounts were excluded from petitioners' income in each year, and their exclusion is not in issue herein. Pursuant to another corporate resolution, adopted on February 12, 1974, JSEA determined that petitioner should "receive a parsonage allowance of $500.00 per month, which is the fair rental value of Reverend Swaggart's home." Pursuant to this resolution, petitioner was paid $6,000 *273 ($500 per month) for each of the years in issue, in addition to his salary, and in addition to the various items paid by JSEA with respect to his residence, as noted above. Petitioners excluded said $6,000 annual payments from their income in each of the years in issue, as a "parsonage allowance." Such amounts were not expended by petitioners in either year for any of the following items with respect to petitioners' residence at 1269 Tara Boulevard: rent; mortgage payment; insurance on residence; taxes on residence; utilities on residence; maintenance on residence; repairs on residence; improvements to residence; fixtures for residence; appliances for residence; or furnishings for the residence. In 1976 and 1977 the fair rental value of petitioners' residence was at least $500 per month, or $6,000 annually. During the years 1967-1969, when petitioners purchased the lot at 1269 Tara Boulevard and built their residence and its addition thereon, the average available home mortgage loan in Baton Rouge, Louisiana, area was over a term of 25 years with interest at an annual rate of 8 percent. The monthly payment necessary to amortize a loan of $60,000 at 8 percent over a term of 25 *274 years is $463.08. Upon audit of petitioners' income tax returns for the years 1976 and 1977, respondent determined that said $6,000 payments in each year to petitioners were not excludable from their gross income, as follows: It is determined that the parsonage allowance paid to you in the amount of $6,000 for 1976 and 1977 does not qualify for exclusion from income under section 107 of the Internal Revenue Code because it was not used to rent or provide a home. Since these amounts were not reported on your tax returns, your taxable income is increased $6,000 for 1976 and 1977. The $500 monthly allowance paid to petitioner by JSEA during 1976 and 1977 was not used in those years to rent or provide a home for petitioner. Section 107 provides: In the case of a minister of the gospel, gross income does not include-- (1) the rental value of a home furnished to him as part of his compensation; or (2) the rental allowance paid to him as part of his compensation, to the extent used by him to rent or provide a home. Respondent's regulations under section 107, so far as relevant here, provide: A rental allowance must be included in the minister's gross *275 income in the taxable year in which it is received, to the extent that such allowance is not used by him during such taxable year to rent or otherwise provide a home. Circumstances under which a rental allowance will be deemed to have been used to rent or provide a home will include cases in which the allowance is expended (1) for rent of a home, (2) for purchase of a home, and (3) for expenses directly related to providing a home * * *. [Sec. 1.107-1(c), Income Tax Regs.] It is respondent's position that since the $500 monthly allowance paid to petitioner by JSEA was concededly not used to rent a home or make payments towards the purchase of a home for petitioner, nor for any of the additional items associated with providing a home, as enumerated in respondent's regulations, petitioner fails to qualify under the exclusion provisions of section 107, so that the $500 monthly allowance must be included in his gross income. Respondent relies upon our prior cases of Marine v. Commissioner,47 T.C. 609 (1967), and *276 Reed v. Commissioner,82 T.C. 208 (1984). Petitioner, on the other hand, argues that respondent's interpretation of the statute discriminates unfairly against those ministers who provide homes for themselves with their own funds, as opposed to those who rent homes or purchase them with mortgage indebtedness. Contending that there is no rational basis for such alleged discrimination, and that it does not properly reflect the intent of Congress in enacting section 107, petitioners contend that the full amount of the $500 per month rental allowance, being concededly not in excess of the fair rental value of petitioners' residence, should be excludable by them from their income. In the alternative, petitioners contend that they are at least entitled to exclude from their income the amount of $463.08 per month, representing the stipulated amount of monthly loan payments which would have been payable during the years 1976 and 1977 if they had chosen to purchase their home with mortgage indebtedness under existing mortgage interest rates. In *277 Marine v. Commissioner,supra, petitioner's church, of which he was the minister, provided that petitioner's salary from the church, up to a limit of $20,000 per year, should be considered as payments of rental allowance to the petitioner. During the year 1963, petitioner sold his old home and purchased a new home. To acquire the new home, he principally used the proceeds of the sale of his old home but, in addition, provided an additional amount of $3,142.22, part of which went to the acquisition of the new home and part of which was spent with respect to his old home. We held that this latter amount was all that could be excluded from petitioner's income in that year since this was the only amount that was paid to petitioner by his church and which was used by him to rent or provide a home, within the meaning of section 107(2). More recently, in Reed v. Commissioner,supra, we considered the situation of a number of ministers who were teachers at the Lubbock Christian College (apparently a church-affiliated institution) and none of whom were provided with living quarters by the college. Each such minister reported to the college the fair *278 rental value of the home which he was occupying in the years in issue, and for such years, the college designated an equivalent amount of the compensation paid as in the nature of a parsonage allowance. In each year involved, the minister's actual expenses in connection with providing a home for himself were less than the amount of his compensation which was designated as a housing allowance. Taxpayers there, as petitioners here, contend that their housing allowance, being not in excess of the fair rental value of the premises, was fully excludable from their gross income regardless of how the funds were actually spent. After examining the language of section 107(2), and the legislative history underlying this language, which came into the law as part of the Internal Revenue Code of 1954, we concluded that Congress intended to exclude from the minister's income only that portion of his compensation paid by the church which was actually used by the minster for the purposes of renting or otherwise providing a home for himself. In so doing, we called attention to the difference in the criteria which Congress provided for exclusion in the two numbered subsections of section 107. *279 In the case of section 107(1), the criterion for exclusion was the fair rental value of the premises furnished to the minister. By contrast, section 107(2) allows the exclusion from gross income of parsonage allowances only to the extent such funds are actually used by the minister for the purposes of providing or maintaining his home. We concluded that this difference in the standards to be applied was not an unintentional slip by Congress, but that the statute was intended to mean exactly what it said. Accordingly, we disallowed all the parsonage allowances in Reed, except to the extent that they were actually used for the purpose of providing or maintaining the minister's home. We think that the present case is indistinguishable from the cases of Marine and Reed, and that the same conclusion is required. In this record, it is undisputed that none of the $500 per month rental allowance paid to petitioner by JSEA was used in any manner for the purpose of renting or providing a home. Petitioners argue that this interpretation of the statute discriminates unfairly against ministers who use their own separate funds to provide homes for themselves, as opposed to other *280 ministers who rent homes or who buy homes incumbered with debt and thereafter make payments of interest and principal on an existing mortgage. Petitioners' argument has some surface appeal, but the short answer is that Congress apparently did not see it that way, and we do not find any warrant for ignoring the clear statutory language and broadening the benefit conferred by section 107 beyond that which Congress intended. As we said in Reed v. Commissioner,supra at 213-214: The Congress has enacted its judgment regarding the rental allowance; we must guard against the efforts of the parties to persuade us to diminish * * * or expand * * * what the Congress has chosen to enact. Decision will be entered for respondent.
Footnotes
1. All statutory references herein are to the Internal Revenue Code of 1954, as in effect in the years in issue, and all rule references are to the Rules of Practice and Procedure of the Tax Court, except as otherwise noted.↩