115 T.C. No. 6

UNITED STATES TAX COURT

TEXTRON INC. AND SUBSIDIARY COMPANIES, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20643-98.                    Filed August 7, 2000.

        A filed a consolidated return with its wholly-
owned subsidiary (PR) in 1977.  During that year, A
distributed a note to PR in redemption of PR's shares
in A.  In 1985, P acquired more than 80 percent of the
stock of A, and thereupon A and PR became members of
P's consolidated group.  In 1987, A redeemed the note
from PR.  Later that year, PR liquidated into A.  <u>Held</u>:
Under sec. 1.1502-14(d)(4), Income Tax Regs., P may not
take a deduction in 1987 for the capital loss PR
realized on the redemption of A's note.

<u>James P. Fuller</u>, <u>Kenneth B. Clark</u>, and <u>David L. Forst</u>, for

petitioner.

<u>Nancy B. Herbert</u> and <u>Ruth M. Spadaro</u>, for respondent.

OPINION

LARO, <u>Judge</u>:  This case is before the Court fully stipulated.  See Rule 122.  Petitioner petitioned the Court to redetermine respondent's determination of deficiencies in Federal income tax for its taxable years ended January 2, 1988, December 31, 1988, December 30, 1989, December 29, 1990, December 28, 1991, and January 2, 1993, in the amounts of $5,083,201, $1,783,938, $244,211, $1,152,171, $14,011,513, and $68,811, respectively.

We decide herein whether petitioner is entitled to a claimed $14,934,745 capital loss for the taxable year ended January 2, 1988 (1987 taxable year).[1]  We hold it is not.  Unless otherwise indicated, section references are to the Internal Revenue Code and the regulations thereunder in effect for the years in issue.[2] Rule references are to the Tax Court Rules of Practice and Procedure.  Dollar amounts are rounded to the nearest dollar.

---

[1] This case involves several issues, some of which have been settled.  The other issues remaining for decision will be addressed in one or more subsequent opinions and/or orders.

[2] The applicable regulations were revised in 1995, with prospective effect.  See T.D. 8597, 60 Fed. Reg. 36671 (July 18, 1995), generally effective for transactions in years beginning after July 11, 1995.

## Background[3]

Textron Inc. (Textron) is the common parent of an affiliated group of corporations within the meaning of section 1504(a) (the Textron group) that filed a consolidated Federal income tax return for its 1987 taxable year. For certain periods of time, members of the Textron group included Paul Revere Corporation (Paul Revere) and AVCO Corporation (AVCO).

Before joining the Textron group in 1985, AVCO was the common parent of its own affiliated group of corporations within the meaning of section 1504(a) (the AVCO group). In February 1967, Paul Revere purchased four million shares of AVCO stock for $135 million. AVCO's remaining stock was owned by the general public and traded on the New York Stock Exchange. In November 1967, AVCO acquired all of the stock of Paul Revere, and Paul Revere became a member of the AVCO group. Paul Revere still owned the four million shares of AVCO stock at the time it was acquired by AVCO.

On December 1, 1977, AVCO redeemed all of Paul Revere's AVCO stock (the stock redemption). In return for this stock, Paul Revere received a promissory note from AVCO (the AVCO note), with a face amount and fair market value of $40,419,005, and other property. Paul Revere realized a $55,353,750 loss on the stock

---

[3] When the petition was filed in this case, petitioner's principal place of business was Providence, Rhode Island.

redemption. Pursuant to section 1.1502-14(b)(1)(iii), Income Tax Regs., the AVCO group did not recognize this loss. Instead, Paul Revere's basis in the AVCO stock was allocated to the property distributed in the stock redemption (including the AVCO note) in accordance with section 1.1502-31(b)(2)(ii), Income Tax Regs.[4]

AVCO and Paul Revere were members of the AVCO group at all times from 1967 to 1985. Textron began to acquire stock in AVCO in 1984, and by January 9, 1985, Textron had acquired in excess of 80 percent of the outstanding stock of AVCO and thereupon AVCO and Paul Revere became members of the Textron group.

On November 11, 1987, AVCO redeemed the AVCO note from Paul Revere for $40,419,005 in cash (the note redemption). This was $14,934,745 less than Paul Revere's basis in the AVCO note.

Paul Revere was liquidated into AVCO in a tax-free liquidation under section 332 on December 30, 1987. AVCO remained with the Textron group through 1992. Textron, as parent of the Textron group, claimed on its 1987 tax return a $14,934,745 long-term capital loss on the note redemption.

## Discussion

We decide whether the Textron group may deduct the loss realized by Paul Revere on the redemption of the AVCO note in 1987. Section 1001 generally requires gain or loss to be

---

[4] The tax treatment of the stock redemption is not in dispute.

recognized upon an exchange of property. See also sec. 1271(a)(1) (amounts received by the holder on the retirement of any debt instrument are considered to be amounts received in exchange for the instrument). Respondent asserts, however, that the loss suffered by Paul Revere on the note redemption is deferred by reason of section 1.1502-14(d)(4)(i), Income Tax Regs., which provides:

> (4) Exception for obligations acquired in tax-free exchanges. (i) If –
>
> (a) A member received an obligation of another member in exchange for property,
>
> (b) The basis of the obligation was determined in whole or in part by reference to the basis of the property exchanged, and
>
> (c) The obligation has never been held by a nonmember,
>
> then any gain or loss of any member on redemption or cancellation of such obligation shall be deferred, and subparagraph (3) of this paragraph shall not apply.

Petitioner offers four independent reasons why section 1.1502-14(d)(4), Income Tax Regs., does not apply to defer its loss on the note redemption: (1) Section 1.1502-14(d)(4), Income Tax Regs., operates solely to override section 1.1502-14(d)(3), Income Tax Regs., and cannot otherwise defer gains or losses; (2) Paul Revere did not receive the AVCO note in a tax-free exchange; (3) the AVCO note was previously held by a nonmember of the Textron group; and (4) Paul Revere did not receive the AVCO note in exchange for property. We address these arguments in turn.

1. <u>Whether Section 1.1502-14(d)(4) Operates Solely as an Exception to Section 1.1502-14(d)(3)</u>

The flush language of section 1.1502-14(d)(4)(i), Income Tax Regs., provides that if the enumerated requirements are met "then any gain or loss of any member on redemption or cancellation of such obligation shall be deferred, and subparagraph (3) of this paragraph shall not apply." Petitioner reads this language to mean that section 1.1502-14(d)(4), Income Tax Regs., operates solely to override section 1.1502-14(d)(3), Income Tax Regs., and does not otherwise operate to defer gains and losses. We disagree.

Section 1.1502-14(d)(3), Income Tax Regs., is a restoration provision, i.e., it establishes the circumstances under which an intercompany gain or loss deferred elsewhere in the consolidated return regulations is triggered into income (i.e., restored). Specifically, section 1.1502-14(d)(3), Income Tax Regs., restores gains or losses deferred with respect to an obligation under section 1.1502-14(d)(1), Income Tax Regs. Gains and losses deferred under section 1.1502-14(d)(1), Income Tax Regs., are those that are "recognized under the Code to a member during a consolidated return year because of a sale or disposition (other than a redemption or cancellation) of an obligation of another member".[5]

---

[5] The parties agree that sec. 1.1502-14(d)(1), Income Tax
(continued...)

If, as petitioner contends, section 1.1502-14(d)(4), Income Tax Regs., functions solely to prevent gains and losses from being restored by section 1.1502-14(d)(3), Income Tax Regs., then it would be inapplicable where there had been no previous deferral under section 1.1502-14(d)(1), Income Tax Regs. However, the example set forth in the regulations at section 1.1502-14(d)(4)(iii), Income Tax Regs., disproves petitioner's contention. In the example, a corporation receives a security from its newly formed subsidiary in a section 351 exchange, and the security is later redeemed.[6] In 1966, when these regulations were implemented, and at all times through the year at issue, no gain or loss was recognized under the Code on the receipt of a

---

[5](...continued)
Regs., is inapplicable both to the 1977 stock redemption and the 1987 note redemption.

[6] The full text of sec. 1.1502-14(d)(4)(iii), Income Tax Regs., is as follows:

This subparagraph may be illustrated by the following example:

Example. Corporation P forms a subsidiary, S, in a transaction to which section 351 applies and receives as a result of such transaction, in addition to stock, a security with a face value of $100 and a basis of $50. If the security is redeemed for $100, the $50 gain on redemption is deferred and is not taken into account until P ceases to be a member or the stock of S is treated as disposed of under this subparagraph.

security in exchange for property in a section 351 transaction.[7] Thus, the corporation's gain in the section 351 exchange would not have been "recognized under the Code" as required to invoke section 1.1502-14(d)(1), Income Tax Regs. As a result, section 1.1502-14(d)(4), Income Tax Regs., operated independently in the example to defer the gain on the redemption of the security and not as an override of section 1.1502-14(d)(3), Income Tax Regs.

Accordingly, we find that gains or losses on the redemption of an obligation may be deferred under section 1.1502-14(d)(4), Income Tax Regs., irrespective of the application of section 1.1502-14(d)(1) and (3), Income Tax Regs.

2. Whether The Stock Redemption Was a "Tax Free" Exchange

The heading to section 1.1502-14(d)(4), Income Tax Regs., refers to obligations acquired in "tax-free exchanges". Petitioner argues that the 1977 stock redemption was not a tax-free exchange because stock redemptions are taxable under section 302.

---

[7] Sec. 351(a) read:

SEC. 351(a) No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock (or securities) in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c)) of the corporation.

Sec. 351 was amended in 1989 to provide that securities could no longer be received tax-free under the provision. See Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, sec. 7203(a), 103 Stat. 2106, 2333.

It is well settled that the heading of a section does not limit the plain meaning of the text.  See <u>Brotherhood of R.R. Trainmen v. Baltimore & O.R. Co.</u>, 331 U.S. 519, 529 (1947); <u>Warren v. Commissioner</u>, 114 T.C. 343, 347 (2000).  The text of section 1.1502-14(d)(4), Income Tax Regs., requires only that an obligation be received in exchange for property and that the basis of the obligation be determined by reference to the basis of the property exchanged.  Paul Revere received the AVCO note in exchange for its AVCO stock, and its basis in the note was determined by reference to its basis in the stock.  See sec. 1.1502-31(b)(2)(ii), Income Tax Regs.  Thus, we find the stock redemption to be a qualifying exchange covered by the provision.[8]

3.   <u>Whether Paul Revere Was a "Nonmember"</u>

Section 1.1502-14(d)(4), Income Tax Regs., applies only if the obligation at issue "has never been held by a nonmember".  Sec. 1.1502-14(d)(4)(i)(<u>c</u>), Income Tax Regs.  Section 1.1502-14(d)(4)(i)(<u>c</u>), Income Tax Regs., does not specify how or when a corporation's status as a member or nonmember is to be determined.  Petitioner focuses on the word "nonmember" and concludes that the deferral of Paul Revere's loss ended in 1987,

---

[8] Even if the heading did limit the scope of the provision, the AVCO group recognized no gain or loss on the stock redemption because the redemption was governed by sec. 1.1502-14(b)(1), Income Tax Regs.  The fact that the redemption would have been taxable under sec. 302 had AVCO and Paul Revere not been members of the same consolidated group is immaterial.

upon AVCO's redemption of the note, because Paul Revere held the note for 7 years before Paul Revere became in 1985 a member of the Textron group.[9]  Throughout that 7-year period, Paul Revere and AVCO both had been members of the AVCO group.

We disagree with petitioner's interpretation of the word "nonmember" in section 1.1502-14(d)(4)(i), Income Tax Regs., because it reads that word out of context and in isolation.  The salient fact is that Paul Revere, having held the note from the date of its issuance, was a member of the Textron group when the note was redeemed.  Petitioner's reading is incongruous with the purpose of the consolidated return regulations and leads to an unreasonable result.  The provisions of the regulation in question must be construed consistently with the framework of the consolidated return regulations, in light of their overall purpose and regulatory scheme.  Cf. Albertson's, Inc. v. Commissioner, 42 F.3d 537, 541 (9th Cir. 1994), affg. 95 T.C. 415 (1990); Woodral v. Commissioner, 112 T.C. 19, 22 (1999); see also Estate of Schwartz v. Commissioner, 83 T.C. 943, 953 (1984)

---

[9] Sec. 1.1502-1(a) and (b), Income Tax Regs., defines "group" and "member" as follows:

> (a) Group.  The term "group" means an affiliated group of corporations as defined in section 1504.  See section 1.1502-75(d) as to when a group remains in existence.

> (b) Member.  The term "member" means a corporation (including the common parent) which is included within such group.

(canons of statutory construction apply to interpretation of Treasury regulations); <u>Whelan v. United States</u>, 208 Ct. C1. 688, 529 F.2d 1000, 1002-1003 (1976) (canons of statutory construction used to interpret administrative regulations).

The consolidated return regulations are built on the premise that members of a consolidated group are a single economic entity with regard to intercompany transactions and distributions and that resulting gains or losses are given effect only when the transferred property, or stock of the transacting member, leaves the consolidated group.  See also secs. 1.1502-13 & 1.1502-14, Income Tax Regs.; see generally 3 Bittker & Lokken, Federal Taxation of Income, Estates and Gifts, par. 90.5, at 90-48 (2d ed. 1991):

> The basic concept underlying * * * [the consolidated return] provisions is that the consolidated group is * * * a single taxable enterprise whose tax liability ought to be based on its dealings with outsiders rather than on intragroup transactions.  This single taxpayer concept lies at the heart of the treatment of intercompany transactions, which, with some exceptions to prevent tax avoidance, are eliminated in computing the group's consolidated taxable income.

Petitioner's interpretation of section 1.1502-14(d)(4)(i)(<u>c</u>), Income Tax Regs., conflicts with this framework.  At the time AVCO redeemed its note from Paul Revere, both were members of the Textron group and both remained members as of the end of the 1987 taxable year.  There were no "dealings with outsiders" that would

entitle the group to take into account the loss from that intercompany transaction.

For purposes of section 1.1502-14(d)(4)(i), Income Tax Regs., we determine the status of Paul Revere as a member or "nonmember" of the Textron consolidated group at the time of redemption of the note. We interpret the word "nonmember" in that provision of the regulations as applying to cases where a member of a consolidated group cancels or redeems an obligation that is held, or was held, by a corporation that is a nonmember at the time of cancellation or redemption. We do not read section 1.1502-14(d)(4)(i), Income Tax Regs., as applying to cases such as we have here where a corporation/noteholder was acquired by and became a member of the consolidated group before the note's redemption or cancellation.

Our reading is supported by consideration of the result that would have occurred had AVCO redeemed Paul Revere's AVCO stock in 1977 for cash. In that case, Paul Revere's loss on the redemption would have been deferred under section 1.1502-14(b)(2)(iii), Income Tax Regs., and would have continued to be deferred as of the end of the 1987 taxable year even though AVCO and Paul Revere were then members of the Textron group rather than the AVCO group. See secs. 1.1502-13(f), 1.1502-14(b)(3), (f), Income Tax Regs. (termination of a consolidated group due to the acquisition of its common parent by a nonmember does not

restore deferred gains and losses if the members of the terminating group become members of another group).  The subject loss, therefore, would have continued to be deferred in the year in which petitioner now claims it is deductible.

Petitioner seeks a result different from a cash redemption relying on the mere fact that AVCO redeemed the stock for a note rather than cash.  We do not believe that this distinction in fact leads to a different result.  Petitioner offers no explanation why the consolidated return regulations would give effect to gains and losses realized in intercompany redemptions paid for with debt but not those realized in intercompany redemptions paid for by cash or other property.  In fact, we understand petitioner to concede that Paul Revere's status as a member of the Textron group at the time the loss was realized on the note redemption satisfies the membership requirement of section 1.1502-14(d)(4)(i)(a), Income Tax Regs. ("A member received an obligation of another member in exchange for property"), even though Paul Revere was not a member of the Textron group at the time it received the AVCO note in exchange for the AVCO stock.  We conclude that Paul Revere is a member for purposes of section 1.1502-14(d)(4)(i)(c), Income Tax Regs., and that the AVCO note was never held by a nonmember.

4.   Whether the AVCO Stock Was "Property"

Deferral under section 1.1502-14(d)(4), Income Tax Regs., is required only if the obligation is received by a member in exchange for property.  See sec. 1.1502-14(d)(4)(i)(a), Income Tax Regs.  The term "property" is undefined in the regulations.

The parties agree that Paul Revere received the AVCO note in a redemption satisfying the requirements of section 302. Petitioner argues that because stock of the distributing corporation is not considered property in a section 302 transaction, the reference in section 1.1502-14(d)(4), Income Tax Regs., to "property" excludes the AVCO stock given up by Paul Revere in the stock redemption.[10]  Petitioner further argues that this reading is consistent with the economic substance of the transaction because this would permit petitioner to recognize and take into account the substantial economic loss that Paul Revere realized in the redemptions.

The pre-1966 consolidated return regulations deferred to Code definitions when a word used in the regulations was not specifically otherwise defined.[11]  See Foster v. Commissioner,

_____

[10]Sec. 317(a) provides:  "For purposes of this part * * * [secs. 301 through 318], 'property' means money, securities, and any other property; except that such term does not include stock in the corporation making the distribution (or rights to acquire such stock)."

[11]T.D. 6894, 1966-2 C.B. 362, promulgated new consolidated return regulations under sec. 1502 of the 1954 Code.  The new
                                        (continued...)

T.C. Memo. 1966-273, modified and remanded on a different issue sub nom. Likins-Foster Honolulu Corp. v. Commissioner, 417 F.2d 285 (10th Cir. 1969).  The 1966 regulations abandoned that rule in favor of a more general requirement that "The Code, or other law, shall be applicable to the group to the extent the [consolidated return] regulations do not exclude its application."  Sec. 1.1502-80, Income Tax Regs.

Here the consolidated return regulations are on point, so contrary provisions in the Code are inoperative.  See First Natl. Bank in Little Rock v. Commissioner, 83 T.C. 202 (1984) (though sections 166 and 585 otherwise entitled bank to take a bad debt deduction arising from an intercompany loan, election of consolidated return treatment required deferral under sec. 1.1502-14(d)(1), Income Tax Regs.).  While the 1977 stock redemption met the requirements of section 302, AVCO and Paul Revere had elected consolidated treatment, and thus the tax consequences of the stock redemption were determined under section 1504 and sections 1.1502-14(b)(1)(iii) and 1.1502-31(b)(2)(ii), Income Tax Regs.  These provisions do not exclude stock of the redeeming corporation from the definition of property.

---

[11](...continued)
regulations were applicable to taxable years beginning after Dec. 31, 1965.

The only authority cited by petitioner in support of its position is Tech. Adv. Mem. 96-27-003 (Feb. 28, 1996).[12]  The TAM concluded that the definition of "redemption" in section 317(b) may have some general application in the determination of whether a redemption took place for the purposes of section 1.1502-13(f)(1), Income Tax Regs.  Petitioner reads into this that respondent's administrative position was that the definition of property set forth in section 317(a) is similarly relevant to the interpretation of the consolidated return regulations.  This assumption is inaccurate.  In G.C.M. 39,608 (Mar. 5, 1987),[13] respondent determined that the gain realized on a consolidated subsidiary's distribution of its parent's stock to its parent in a section 311 transaction resulted in a deferral of gain pursuant to section 1.1502-14(c)(1), Income Tax Regs.  The G.C.M. found the stock of the parent corporation to be "property" for purposes of the consolidated return regulations even though the stock was held by the parent as treasury stock after the distribution.  The G.C.M. concurrently looked to the section 317(b) definition of

---

[12]Technical advice memoranda (TAMs) and private letter rulings have no precedential value but merely represent the Commissioner's position as to a specific set of facts.  See sec. 6110(k)(3); Bunney v. Commissioner, 114 T.C. ___, ___ n.2 (2000) (slip op. at 5).

[13]A general counsel memorandum is a legal opinion from one division of the Commissioner's Office of Chief Counsel to another and is not binding on this Court.  See Old Harbor Native Corp. v. Commissioner, 104 T.C. 191, 207 (1995).

redemption to interpret section 1.1502-13(f)(1), Income Tax Regs. Thus, respondent did not consider the two positions to be contradictory. We are not aware that respondent has ever taken the position, administratively or otherwise, that the definitions found in section 317 are universally applicable to interpret the consolidated return regulations.

In any case, as stated above, had AVCO redeemed the stock for cash, the gain or loss would have been deferred under section 1.1502-14(b)(2)(iii), Income Tax Regs. Under petitioner's interpretation, a consolidated taxpayer could elect to recognize losses on the redemption of the stock between members at its whim. Instead of redeeming depreciated member stock with cash, it could simply redeem the stock with debt and then retire the debt. We decline petitioner's invitation to interpret an undefined term so as to achieve this anomalous result. Petitioner's interpretation would undermine the structure of the consolidated return regulations by treating as recognition events what are purely intragroup transactions.

As to petitioner's economic substance argument, the consolidated return regulations were promulgated under the congressional mandate of section 1502 to regulate the privilege of filing consolidated returns. Once an eligible group of corporations consents to consolidation both the taxpayer and the Government are bound by the consolidated return regulations. See

sec. 1502.  Though Paul Revere may have realized a genuine economic loss on a separate entity basis, recognition of that loss is deferred by reason of petitioner's election to be bound by the consolidated return regulations.

5. <u>Whether the Loss Was Restored Upon Liquidation of Paul Revere</u>

As a final matter, we note that the liquidation of Paul Revere in 1987 did not restore Paul Revere's loss on the note redemption.  A member's gain or loss deferred by section 1.1502-14(d)(4), Income Tax Regs., is restored immediately before the earlier of the time:  (1) When the deferring member (in this case, Paul Revere) ceases to be a member, or (2) when the stock of the debtor member (in this case, AVCO) is considered to be disposed of by any member.  See sec. 1.1502-14(d)(4)(ii), Income. Tax Regs.  However, in the event the deferring member ceases to be a member because its assets are acquired by another member of the group in a transaction described in section 381(a) (such as a section 332 liquidation), the gain or loss is not so restored. See sec. 1.1502-14(e)(2), Income Tax Regs.  Paul Revere ceased to be a member of the Textron Group when it liquidated in a section 332 transaction.  Thus, the liquidation was not a restoration event.

In reaching our holdings herein, we have considered all arguments made by the parties, and, to the extent not discussed above, we find those arguments to be irrelevant or without merit.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.