117 T.C. No. 7


UNITED STATES TAX COURT


TEXTRON INC. AND SUBSIDIARY COMPANIES, Petitioner <u>v</u>.
    COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 20643-98.                    Filed August 21, 2001.

        P, a domestic corporation, acquired substantially
all of the stock of A, a foreign corporation.  The
Federal Trade Commission (FTC) contemporaneously filed
a complaint in U.S. District Court seeking to enjoin
P's acquisition and control of A pending resolution of
potential restraint of trade issues.  Pursuant to the
court's order, P transferred its A stock to a voting
trust pending the FTC's consideration of the issues.
The trust had an independent trustee who held and voted
the stock without influence by P.  The trustee was
directed to, and did, operate A independently of P and
as an active competitor of P.  P was the trust's only
beneficiary.
        <u>Held</u>:  Sec. 951(a), I.R.C., does not include A's
subpt. F income in P's income because P did not own the
A shares after the transfer.
        <u>Held</u>, <u>further</u>, sec. 951(a), I.R.C., includes A's
subpt. F income in the trust's income which, under
secs. 671 and 677(a), I.R.C., must be recognized by P.

James P. Fuller, Kenneth B. Clark, and David L. Forst, for petitioner.

Nancy B. Herbert, Ruth M. Spadaro, and Jeffrey L. Bassin, for respondent.


OPINION


LARO, Judge:  This matter is before the Court on cross-motions for partial summary judgment.  See Rule 121.[1]  Petitioner petitioned the Court to redetermine respondent's determination of deficiencies of $5,083,201, $1,783,938, $244,211, $1,152,171, $14,011,513, and $68,811 in its Federal income tax for its taxable years ended January 2, 1988, December 31, 1988, December 30, 1989, December 29, 1990, December 28, 1991, and January 2, 1993, respectively.

Following our disposition of the other issue in this case, see Textron Inc. & Sub. Cos. v. Commissioner, 115 T.C. 104 (2000), we must decide whether petitioner's 1989 through 1992 income includes the "subpart F income" (defined infra p. 12) of Avdel PLC (Avdel), a controlled foreign corporation (CFC).  We hold it does.

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years in issue.  Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

Textron, Inc. (Textron), is a corporation whose principal place of business was in Providence, Rhode Island, when the petition was filed. In early 1989, Textron acquired substantially all of the stock of Avdel, a public limited company organized under the laws of the United Kingdom. Avdel's shares were traded on the London Stock Exchange. By February 21, 1989, Textron had acquired more than 95 percent of Avdel's stock.

On February 21, 1989, the Federal Trade Commission (FTC) filed a complaint in the U.S. District Court for the District of Columbia (the District Court). The complaint sought to enjoin Textron's acquisition and control of Avdel and its assets until potential restraint of trade issues could be resolved. One day later, the District Court issued a temporary restraining order (the TRO) providing that Textron was "temporarily restrained and enjoined from * * * assuming or exercising any form of direction or control over the assets or operations of Avdel". The District Court issued the TRO for the purposes

> of assuring that Avdel will remain viable and
> competitive with Textron; of maintaining the businesses
> of Textron and Avdel separate from and independent of
> one another; [and] of continuing the state of
> competition between Textron and Avdel * * * to the same
> extent as if Textron and Avdel were in all respects
> separate and independent business entities.

The TRO stated, at section IV, that "All rights to exercise voting power with respect to the Avdel shares held by Textron

shall be vested in a trustee, who shall be appointed by the Court and who shall act in accordance with the Voting Trust Agreement". The TRO specifically barred Textron from exercising any voting rights with respect to the Avdel shares.

The District Court terminated the TRO and superseded it by a preliminary injunction order dated March 2, 1989 (the order). As relevant herein, the order stated, at section II, that it was entered for the purposes:

> of maintaining the status quo ante pendente lite by allowing Textron to retain, subject to the terms of this Order, any Avdel shares it may have acquired prior to the entry of this Order, and any Avdel shares it may henceforth acquire, pending consideration on the merits by the Federal Trade Commission; of assuring that Avdel will remain viable and competitive with Textron; of maintaining the businesses of Textron and Avdel separate from and independent of one another; [and] of continuing the state of competition between Textron and Avdel * * * to the same extent as if Textron and Avdel were in all respects separate and independent entities * * *.

The order specifically enjoined Textron "from assuming or exercising any form of direction or control over Avdel PLC, except as provided by this Order." The order stated, at section IV, that

> For the term of this Order Textron shall not exercise any voting power, influence, or control, directly or indirectly, with respect to the conduct of Avdel or the shares of Avdel held by it. All rights to exercise voting power with respect to the Avdel shares held by Textron shall be vested in a trustee, who shall be appointed by the Court and who shall act in accordance with the Voting Trust Agreement * * * [and] use his best business judgment in exercising such voting trust

power * * * in a manner consistent with the purpose and requirements of this Order.

The order also stated, at section V, that,

Textron shall not exercise nor attempt to exercise direction or control over, or influence or attempt to influence directly or indirectly, the conduct of Avdel's business during the term of this Order. Avdel shall be maintained as a separate corporate entity with an independent Board of Directors. In no event shall any director, officer, employee, agent or representative of Textron become or remain a member of Avdel's Board of Directors or become or remain an officer of Avdel. Nor may any director, officer, employee, agent or representative of Avdel become or remain a member of Textron's Board of Directors or become or remain an officer of Textron.

On March 13, 1989, Textron and Patricia P. Bailey (Ms. Bailey) entered into an agreement (the voting trust agreement) which created a voting trust (voting trust) with respect to the Avdel shares, pursuant to the requirements of the order. The voting trust agreement named Ms. Bailey, an attorney from Washington, D.C., as trustee. Before serving as trustee, Ms. Bailey had been a Commissioner of the FTC from October 1979 through May 1988.

Ms. Bailey understood that, in general, her role as trustee was to ensure that Avdel remained financially healthy and functioned independently of any control of Textron and as a vigorous competitor of Textron. The voting trust agreement, at section 3, directed Ms. Bailey to hold, personally or through an agent, the certificates representing all shares of Avdel stock acquired by Textron. She did so in her capacity as trustee and

was precluded by section 4(c) from having any beneficial interest in those shares. The voting trust agreement, at section 4(c), stated that, other than the trustee, "No * * * person shall have any voting right in respect of the [Avdel] Stock so long as this Agreement is in effect." Throughout the term of the voting trust agreement, Ms. Bailey held all Avdel stock certificates.

The voting trust agreement, at section 4(a), stated that the trustee would "in his [sic] sole discretion, subject to the provisions of this section * * * have the duty to exercise all voting rights of the [Avdel] Stock, including the right to vote the Stock on all matters upon which the holders of the Stock are entitled to vote." The voting trust agreement barred Textron from exercising any voting rights with respect to the Avdel shares and from having any control over the Avdel board of directors. Moreover, the voting trust agreement, at section 4(f), stated that "The Trustee shall take all steps to ensure that Avdel competes as vigorously with Textron as it would should there be no relationship between Textron and Avdel."

The voting trust agreement, at section 8(a), further provided that

> Textron shall be entitled to receive from time to time payments equal to the amount of any cash dividends if the trustee, in his [sic] sole discretion, believes payment of such dividends would be prudent. Such payments shall be made by the Trustee as soon as practicable after the receipt of the dividends. In lieu of receiving cash dividends and paying them to

> Textron, the Trustee may instruct Avdel in writing to pay the cash dividends directly to Textron.

Section 8(b) required the trustee to hold for the benefit of Textron any shares of Avdel stock received as dividends. Section 8(c) provided that the trustee would receive all proceeds of a sale or exchange of Avdel's assets or stock and, after deducting the associated expenses, pay the amounts to Textron. Section 8(d) provided that any other distributions with respect to Avdel's stock would be distributed to Textron.

The order and voting trust agreement were in force from their effective dates throughout the end of the period at issue (the last day of petitioner's 1992 taxable year). The order and voting trust agreement terminated pursuant to a decision and order issued by the FTC on May 6, 1994.

During the period that the order and the voting trust agreement were in effect, Ms. Bailey, Textron, and Avdel complied with the provisions of the order and the voting trust agreement. In accordance with the voting trust agreement, the trustee surrendered to Avdel the Avdel stock received from Textron, and Avdel issued new stock certificates registered in the name of Ms. Bailey. Ms. Bailey exercised the voting rights of the shares of Avdel stock in accordance with the order and the voting trust agreement. Throughout the period at issue, Avdel had four directors, one of whom was Ms. Bailey.

No director, officer, employee, agent, or representative of Textron was a member of Avdel's board of directors or an officer of Avdel at any time during the period at issue. No director, officer, employee, agent, or representative of Avdel was a member of Textron's board of directors or an officer of Textron at any time during the period at issue. Throughout the period at issue, Avdel's board of directors and officers ran the Avdel business. Textron had no influence or control over the running of the Avdel business. During that time, Avdel's board of directors determined Avdel's dividend policy, and Textron had no influence or control over that policy.

Throughout the period at issue, Avdel's board of directors and officers had complete control over the reorganization, consolidation, and liquidation of companies in the Avdel group. Textron had no influence or control over these types of restructuring. There was no contact of any kind between any officer or director of Textron and any officer or director of Avdel that was not supervised personally by Ms. Bailey. Few such contacts occurred, and business matters were not discussed. While the order was in effect, Avdel's board of directors had complete control over the compensation of Avdel's officers. In this regard, Avdel hired a third-party consultant to advise on matters of compensation. Textron had no influence or control over the compensation of Avdel's officers.

Textron did not acquire Avdel to serve as a "tax haven device".

## Discussion

The current issue, before the Court on cross-motions for partial summary judgment, is one of first impression. It involves the interaction of the rules relating to CFCs contained in subpart F (subpart F) of subchapter N (i.e., sections 951 through 963) and the rules relating to grantor trusts contained in subpart E (subpart E) of subchapter J (i.e., sections 671 through 679). The relevant provisions of subpart F are sections 951(a) and (b) and 958(b). The relevant provisions of subpart E are sections 671, 672(a) and (b), and 677(a). We set forth the relevant text of these provisions in an appendix.

Each party asserts that it is entitled to partial summary judgment on the subject issue. Respondent argues that Textron is considered the owner of the Avdel shares under subpart E and, hence, a United States shareholder (U.S. shareholder) under subpart F whose income includes Avdel's subpart F income. Petitioner argues that Textron is not a U.S. shareholder under subpart F. Petitioner asserts that a taxpayer is a U.S. shareholder for that purpose only if the taxpayer can vote the shares of the CFC. Petitioner points out that Textron could not vote Avdel's shares and concludes that Textron was not required to include in its income Avdel's subpart F income.

Respondent argues alternatively that the voting trust was both a grantor trust under subpart E and a U.S. shareholder under subpart F.  Respondent asserts that Textron is the voting trust's grantor and, in accordance with subpart E, must include in its income any Avdel subpart F income realized by the trust. Petitioner replies that subpart E was not intended to be applied in the manner suggested by respondent.

A. Summary Judgment

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials of phantom factual issues. P & X Mkts., Inc. v. Commissioner, 106 T.C. 441, 443 (1996), affd. without published opinion 139 F.3d 907 (9th Cir. 1998). Summary judgment is appropriate where there is no genuine issue as to any material fact and a decision may be rendered as a matter of law.  Rule 121(b); P & X Mkts., Inc. v. Commissioner, supra at 443.  In deciding whether to grant summary judgment, the Court must consider the factual materials and inferences drawn from them in the light most favorable to the nonmoving party. Bond v. Commissioner, 100 T.C. 32, 36 (1993); Naftel v. Commissioner, 85 T.C. 527, 529 (1985).

The parties agree that for the purpose of deciding these cross-motions there are no genuine issues of material fact and that the Court may decide the issue as a matter of law.  This

case is ripe for disposition of that issue by partial summary judgment.

B.  Subpart F

In order to explain the issue before the Court, it is necessary to set out an overview of the operation of subpart F. Before 1962, the income of a foreign corporation, even one owned by a U.S. shareholder, generally was not subject to U.S. tax if the income was earned outside the United States and not repatriated as a dividend.  Some domestic corporations, therefore, would keep a foreign subsidiary's earnings in a "tax haven" country in order to defer U.S. tax until the money was repatriated.  See Office of Tax Policy, U.S. Dept. of Treasury, Doc. 2001-492, The Deferral of Income Earned through U.S. Controlled Foreign Corporations:  A Policy Study 13 (2000).  To curtail that practice, Congress added subpart F to the Code by way of section 12 of the Revenue Act of 1962, Pub. L. 87-834, 76 Stat. 1006.  See also H. Rept. 1447, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 405, 461; S. Rept. 1881, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 707, 784.  See generally Yoder, 926-2d Tax Mgmt. (BNA), "Subpart F-General", at A-3 (2000), for a detailed discussion of the background to and legislative history of subpart F.  Subpart F generally requires that a U.S. shareholder include in its gross income its pro rata share of subpart F income derived by a CFC.  Sec. 951(a).  Subpart F requires this

result even if the subpart F income is not actually distributed. See Vetco, Inc. v. Commissioner, 95 T.C. 579, 586-587 (1990).

The object of subpart F is to tax currently specified earnings of foreign corporations that are, in the aggregate, controlled by U.S. shareholders. The scope of subpart F, however, is limited. It applies primarily to the types of income described in section 952 (subpart F income). Secs. 951(a) and 952. Moreover, it affects only foreign corporations that are controlled by certain U.S. shareholders and, in those cases, applies only to those U.S. shareholders who own a requisite percentage of a CFC's voting power. Secs. 951(b), 957(a).

Our analysis of whether a taxpayer who is a shareholder in a foreign corporation must include subpart F income in the taxpayer's income starts with a determination of whether the foreign corporation is a CFC. A CFC is any foreign corporation more than 50 percent of whose stock, either by voting power or value, is owned directly, indirectly, or constructively by U.S. shareholders. Sec. 957(a). The parties agree that Avdel is a CFC.

We next address the question of whether the taxpayer is a U.S. shareholder subject to the inclusion of subpart F income under section 951(a). The phrase "U.S. shareholder" is a term of art that finds its meaning in section 951(b). Our reading of that text in conjunction with our reading of section 951(a)

reveals that not every U.S. shareholder in a CFC is subject to section 951(a).  Section 951(a) applies only to a taxpayer "who owns (within the meaning of section 958(a)) stock in such corporation [the CFC] on the last day, in such year, on which such corporation is a controlled foreign corporation".  As opposed to the broadly inclusive text of section 951(b), where direct, indirect, and constructive ownership is considered, section 951(a) requires that the shares be directly owned or indirectly owned within the meaning of section 958(a) for the inclusion to be required.  Section 958(a) attributes only stock owned through foreign entities to its indirect domestic owner.  Thus, a taxpayer who owns no stock through a foreign entity is subject to the inclusion of subpart F income under section 951(a) only if the taxpayer is a U.S. shareholder who directly owns stock in the CFC.

Here, such is not the case.  Textron did not directly own the Avdel shares.  The voting trust did.  Ms. Bailey, as trustee of the voting trust, held all of the Avdel shares that Textron had purchased and owned them in her capacity as the voting trust's trustee.  While Textron is considered to own those shares under section 958(b), which incorporates by reference section 318 (with amendments),[2] Textron did not own those shares either

_____

[2] Sec. 318 in relevant part provides:

(continued...)

directly or indirectly within the meaning of sections 951(a) and 958(a).

Respondent argues that constructive ownership of the Avdel shares under the grantor trust rules, specifically section 677(a), satisfies the direct or indirect ownership requirement of section 951(a). We disagree. Our comparison of the language in

---

[2](...continued)
SEC. 318.  CONSTRUCTIVE OWNERSHIP OF STOCK.

> (a)  General Rule.--For purposes of those provisions of this subchapter to which the rules contained in this section are expressly made applicable--
>
> > *    *    *    *    *    *    *
>
> > (2) Attribution from partnerships, estates, trusts, and corporations.--
>
> > *    *    *    *    *    *    *
>
> > > (B) From trusts.--
> > >
> > > (i) Stock owned, directly or indirectly, by or for a trust * * * shall be considered as owned by its beneficiaries in proportion to the actuarial interest of such beneficiaries in such trust.
> > >
> > > (ii) Stock owned, directly or indirectly, by or for any portion of a trust of which a person is considered the owner under subpart E of part I of subchapter J (relating to grantors and others treated as substantial owners) shall be considered as owned by such person.

section 951(a) and (b) reveals that Congress was acutely aware of the various ways that a taxpayer could be considered to be an owner of an asset. By incorporating the constructive ownership rules into section 951(b) (by reference to section 958(b), which, in turn, references section 318(a)), and excluding the constructive ownership rules from section 951(a) (by choosing not to include a comparable reference), Congress prescribed a specific meaning for the term "owns" in section 951(a). See also S. Rept. 1881, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 703, 943-944 (legislative history helps to make clear how direct and indirect ownership, on the one hand, are distinguished from constructive ownership, on the other hand, for purposes of the gross income inclusion required by subpart F). In a case such as this, where "a statute limits a thing to be done in a particular mode, it [the statute] includes the negative of any other mode." Botany Worsted Mills v. United States, 278 U.S. 282, 289 (1929). This principle of statutory construction, which reflects an ancient maxim "expressio unius est exclusio alterius" (the expression of one thing is to the exclusion of the other), is applicable here. See Natl. R.R. Passenger Corp. v. Natl. Association of R.R. Passengers, 414 U.S. 453, 458 (1974); see also Natl. Truck Equip. Association v. Natl. Highway Traffic Safety Admin., 972 F.2d 669, 674 (6th Cir. 1992) ("In interpreting silence, we keep in mind the statutory canon

expressio unius est exclusio alterius"). We decline respondent's invitation to extend the operation of section 677(a) to the facts at hand to treat Textron as the owner of the Avdel shares for the purpose of section 951(a).

### C. Application of Subpart F to the Voting Trust and Subpart E to Textron

Domestic trusts are generally taxable entities whose taxable income is computed in the same manner as that of individuals. Sec. 641. Generally speaking, an arrangement will be treated as a trust under the Internal Revenue Code if it can be shown that the purpose of the arrangement is to vest in a trustee responsibility for the protection and conservation of property for one or more beneficiaries who cannot share in the discharge of this responsibility and, therefore, are not associates in a joint enterprise for the conduct of business for profit. Sec. 301.7701-4, Proced. & Admin. Regs. An arrangement, therefore, will be classified as a trust for Federal income tax purposes if it is a bona fide transaction that involves a trustee, a beneficiary, and trust property (res). See <u>Bibby v. Commissioner</u>, 44 T.C. 638 (1965); see also <u>Estate of Wedum v. Commissioner</u>, T.C. Memo. 1989-184 ("The elements of a valid express trust * * * are: (1) a designated trustee subject to enforceable duties, (2) a designated beneficiary vested with enforceable rights, and (3) a definite trust res wherein the

trustee's title and estate is separated from the vested beneficial interest of the beneficiary.").

Following our review of the record before us, including especially our reading of the voting trust agreement, we conclude that the voting trust meets each of the requirements necessary to establish a trust for Federal income tax purposes. The District Court ordered the creation of the voting trust upon the joint motion of Textron and the FTC so that Textron could retain beneficial ownership of Avdel while the FTC reviewed the potential restraint of trade issues. Textron settled the Avdel shares into the voting trust, and the trustee assumed ownership of the shares in accordance with the obligations set forth in the voting trust agreement. Textron was the voting trust's sole beneficiary; i.e., Textron was the only contributor of property to the voting trust, and Textron was the only holder of a beneficial interest in the trust property under the voting trust agreement.

Respondent asserts that the voting trust is a grantor trust that in each of the subject years realized subpart F income attributable to its ownership of the Avdel shares. Respondent also asserts that Textron is the grantor of the trust and, as such, must recognize the trust's subpart F income under subpart E. We agree with both of these assertions. First, we find that Avdel was a CFC and that the voting trust owned directly (and had

the ability to vote without restriction) more than 10 percent of Avdel's voting power.  For the purpose of subpart F, a "United States person" is defined in section 957(c), and the voting trust is a domestic trust that is included in that definition.[3]  Sec. 7701(a)(30).  Given the fact that Avdel is a CFC and that the voting trust is a U.S. person possessing more than 10 percent of Avdel's voting power, we conclude that the voting trust is a U.S. shareholder under section 951(b).

As discussed above, section 951(a) requires that a taxpayer who is a U.S. shareholder include in its gross income a pro rata share of the subpart F income attributable to its shareholding in a CFC.  Here, prima facie, the voting trust must include a pro rata share of Avdel's subpart F income in its gross income. Subpart E, however, provides an exception to the general rule that trusts are taxable on their income.  Under these provisions, "when a grantor who has certain powers in respect of trust property that are tantamount to dominion and control over such property, the Code 'looks through' the trust form and deems such grantor or other person to be the owner of the trust property and attributes the trust income directly to such person."  Estate of O'Connor v. Commissioner, 69 T.C. 165, 178 (1977).

---

[3] Petitioner does not argue that the voting trust is properly characterized as a foreign trust.

Section 677(a) treats as an owner of a trust a grantor who retains certain rights to income from the trust. Section 671 provides that the deemed owner of the trust, rather than the trust, is currently taxed on the trust's income. The grantor is considered the owner of the trust or of a portion of the trust "if he has retained any interest which might, without the approval or consent of an adverse party, enable him to have the income from that portion distributed to him at some time either actually or constructively". Sec. 1.677(a)-1(c), Income Tax Regs. An "adverse party" is one who has a substantial beneficial interest in the trust which would be adversely affected by the exercise or nonexercise of the power that he, she, or it possesses respecting the trust. Sec. 672(a).

Pursuant to section 677(a), Textron is considered to be the grantor of a grantor trust; to wit, the voting trust. Textron was entitled, subject to the exercise of the trustee's discretion, to payments of income from the voting trust equal to the amounts of cash dividends distributed to the trust by Avdel. Textron also was entitled to payments from the voting trust of any money or property received through any other distributions by Avdel to the trust. Textron also was the only holder of a beneficial interest in either the income or the corpus of the voting trust. Given the additional fact that the trustee, the only other person associated with the trust, was not an "adverse

party" within the meaning of that term (e.g., she had no beneficial interest in the voting trust), we conclude that Textron was entitled to income of the trust without the approval or consent of an adverse party. Accordingly, we hold that the voting trust is properly classified as a grantor trust.[4]

The consequence of classifying the voting trust as a grantor trust is that Textron is considered to be the owner of the trust. As such, Textron, and not the voting trust, must include the trust's Avdel subpart F income in its (Textron's) gross income. Sec. 671. We disagree with petitioner that subpart E was not meant to apply to the facts at hand. We do not find in the text or policy of the applicable statutes an exception that would insulate petitioner from taxation.

We hold that the subpart F income attributable to the ownership of the Avdel shares is properly includable in Textron's income by virtue of the combined operation of subpart F (which requires inclusion of that income in the voting trust's income)

---

[4] The fact that Textron could not vote the Avdel shares is of no concern to us for purposes of sec. 677.

and subpart E (which requires that the income be included in Textron's income).  Accordingly,

> An order will be issued granting respondent's motion for partial summary judgment and denying petitioner's motion for partial summary judgment, and decision will be entered under Rule 155.

APPENDIX

SEC. 671. TRUST INCOME, DEDUCTIONS, AND CREDITS
        ATTRIBUTABLE TO GRANTORS AND OTHERS AS
        SUBSTANTIAL OWNERS.

Where it is specified in this subpart that the grantor or another person shall be treated as the owner of any portion of a trust, there shall then be included in computing the taxable income and credits of the grantor or the other person those items of income, deductions, and credits against tax of the trust which are attributable to that portion of the trust to the extent that such items would be taken into account under this chapter in computing taxable income or credits against the tax of an individual. Any remaining portion of the trust shall be subject to subparts A through D. No items of a trust shall be included in computing the taxable income and credits of the grantor or of any other person solely on the grounds of his dominion and control over the trust under section 61 (relating to definition of gross income) or any other provision of this title, except as specified in this subpart.

SEC. 672. DEFINITIONS AND RULES.

(a) Adverse Party.--For purposes of this subpart, the term "adverse party" means any person having a substantial beneficial interest in the trust which would be adversely affected by the exercise or nonexercise of the power which he possesses respecting the trust. A person having a general power of appointment over the trust property shall be deemed to have a beneficial interest in the trust.

(b) Nonadverse Party.--For purposes of this subpart, the term "nonadverse party" means any person who is not an adverse party.

*    *    *    *    *    *    *

SEC. 677. INCOME FOR BENEFIT OF GRANTOR.

(a) General Rule.--The grantor shall be treated as the owner of any portion of a trust, whether or not he is treated as such owner under section 674, whose

income without the approval or consent of any adverse party is, or, in the discretion of the grantor or a nonadverse party, or both, may be--

    (1) distributed to the grantor or the grantor's spouse;

    (2) held or accumulated for future distribution to the grantor or the grantor's spouse; or

    (3) applied to the payment of premiums on policies of insurance on the life of the grantor or the grantor's spouse (except policies of insurance irrevocably payable for a purpose specified in section 170(c) (relating to definition of charitable contributions)).

This subsection shall not apply to a power the exercise of which can only affect the beneficial enjoyment of the income for a period commencing after the occurrence of an event such that the grantor would not be treated as the owner under section 673 if the power were a reversionary interest; but the grantor may be treated as the owner after the occurrence of the event unless the power is relinquished.

        *    *    *    *    *    *    *

SEC. 951.  AMOUNTS INCLUDED IN GROSS INCOME OF UNITED
           STATES SHAREHOLDERS.

    (a) Amounts Included.--

        (1) In general.--If a foreign corporation is a controlled foreign corporation for an uninterrupted period of 30 days or more during any taxable year, every person who is a United States shareholder (as defined in subsection (b)) of such corporation and who owns (within the meaning of section 958(a)) stock in such corporation on the last day, in such year, on which such corporation is a controlled foreign corporation shall include in his gross income, for his taxable year in which or with

which such taxable year of the corporation ends--

    (A) the sum of--

        (i) his pro rata share (determined under paragraph (2)) of the corporation's subpart F income for such year,

        (ii) his pro rata share (determined under section 955(a)(3) as in effect before the enactment of the Tax Reduction Act of 1975) of the corporation's previously excluded subpart F income withdrawn from investment in less developed countries for such year, and

        (iii) his pro rata share (determined under section 955(a)(3)) of the corporation's previously excluded subpart F income withdrawn from foreign base company shipping operations for such year; and

    (B) his pro rata share (determined under section 956(a)(2)) of the corporation's increase in earnings invested in United States property for such year (but only to the extent not excluded from gross income under section 959(a)(2)).

    (2) Pro rata share of subpart F income.-- The pro rata share referred to in paragraph (1)(A)(i) in the case of any United States shareholder is the amount--

(A) which would have been distributed with respect to the stock which such shareholder owns (within the meaning of section 958(a)) in such corporation if on the last day, in its taxable year, on which the corporation is a controlled foreign corporation it had distributed pro rata to its shareholders an amount (i) which bears the same ratio to its subpart F income for the taxable year, as (ii) the part of such year during which the corporation is a controlled foreign corporation bears to the entire year, reduced by

(B) the amount of distributions received by any other person during such year as a dividend with respect to such stock, but only to the extent of the dividend which would have been received if the distribution by the corporation had been the amount (i) which bears the same ratio to the subpart F income of such corporation for the taxable year, as (ii) the part of such year during which such shareholder did not own (within the meaning of section 958(a)) such stock bears to the entire year.

(3) Limitation on pro rata share of previously excluded subpart F income withdrawn from investment.--For purposes of paragraph (1)(A)(iii), the pro rata share of any United States shareholder of the previously excluded subpart F income of a controlled foreign corporation withdrawn from investment in foreign base company shipping operations shall not exceed an amount--

(A) which bears the same ratio to his pro rata share of such

income withdrawn (as determined under section 955(a)(3)) for the taxable year, as

    (B) the part of such year during which the corporation is a controlled foreign corporation bears to the entire year.

    (4) Limitation on pro rata share of investment in United States property.- For purposes of paragraph (1)(B), the pro rata share of any United States shareholder in the increase of the earnings of a controlled foreign corporation invested in United States property shall not exceed an amount (A) which bears the same ratio to his pro rata share of such increase (as determined under section 956(a)(2)) for the taxable year, as (B) the part of such year during which the corporation is a controlled foreign corporation bears to the entire year.

    (b) United States Shareholder Defined.--For purposes of this subpart, the term "United States shareholder" means, with respect to any foreign corporation, a United States person (as defined in section 957(c)) who owns (within the meaning of section 958(a)), or is considered as owning by applying the rules of ownership of section 958(b), 10 percent or more of the total combined voting power of all classes of stock entitled to vote of such foreign corporation.

                *    *    *    *    *    *    *

SEC. 958.  RULES FOR DETERMINING STOCK OWNERSHIP.

    (a)  Direct and Indirect Ownership.--

    (1) General rule.--For purposes of this subpart (other than sections 955(b)(1)(A) and (B), 955(c)(2)(A)(ii), and 960(a)(1)), stock owned means

        (A) stock owned directly, and

        (B) stock owned with the application of paragraph (2).

(2) Stock ownership through foreign entities.--For purposes of subparagraph (B) of paragraph (1), stock owned, directly or indirectly, by or for a foreign corporation, foreign partnership, or foreign trust or foreign estate (within the meaning of section 7701(a)(31)) shall be considered as being owned proportionately by its shareholders, partners, or beneficiaries.  Stock considered to be owned by a person by reason of the application of the preceding sentence shall, for purposes of applying such sentence, be treated as actually owned by such person.

*    *    *    *    *    *    *

(b) Constructive Ownership.--For purposes of sections 951(b), 954(d)(3), 956(b)(2), and 957, section 318(a) (relating to constructive ownership of stock) shall apply to the extent that the effect is to treat any United States person as a United States shareholder within the meaning of section 951(b), to treat a person as a related person within the meaning of section 954(d)(3), to treat the stock of a domestic corporation as owned by a United States shareholder of the controlled foreign corporation for purposes of section 956(b)(2), or to treat a foreign corporation as a controlled foreign corporation under section 957, except that--

(1) In applying paragraph (1)(A) of section 318(a), stock owned by a nonresident alien individual (other than a foreign trust or foreign estate) shall not be considered as owned by a citizen or by a resident alien individual.

(2) In applying subparagraphs (A), (B), and (C) of section 318(a)(2), if a partnership, estate, trust, or corporation owns, directly or indirectly, more than 50 percent of the total combined voting power of all classes of

stock entitled to vote of a corporation, it shall be considered as owning all the stock entitled to vote.

(3) In applying subparagraph (C) of section 318(a)(2), the phrase "10 percent" shall be substituted for the phrase "50 percent" used in subparagraph (C).

(4) Subparagraphs (A), (B), and (C) of section 318(a)(3) shall not be applied so as to consider a United States person as owning stock which is owned by a person who is not a United States person.