FRED B. MARINE AND DORA MARINE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 602–66. Filed March 20, 1967.

*William E. Schoeberlein*, for the petitioners.
*William Morris*, for the respondent.

RAUM, *Judge:* The Commissioner determined a $1,549.64 deficiency in the 1963 income tax of petitioners, husband and wife, who are residents of Baltimore, Md., and who filed their 1963 joint income tax return with the district director at Baltimore. During 1963 petitioner Fred B. Marine (sometimes hereinafter referred to as petitioner) was a minister of the Church of God and the pastor of the Evangelical Bible Church in Baltimore. He received payments totaling $13,474.83 from the church in 1963, which he sought to exclude in their entirety from his gross income as a "rental allowance." The sole issue is whether the Commissioner erred in determining that only $3,142.22 of the foregoing payments was excludable from petitioner's gross income under section 107(2) of the 1954 Code, which provides that in the case of a minister of the gospel "gross income does not include * * * (2) the rental allowance paid to him as part of his compensation, to the extent used by him to rent or provide a home." The facts have been stipulated.

On January 1, 1963, the Board of Trustees of the Evangelical Bible Church signed the following statement:

FOR THE YEAR 1963 and thereafter unless modified, all payments to Reverend Fred B. Marine are to be considered rental allowance unless the payments exceed $20,000.00. This rental allowance is also to provide reimbursement to Reverend Marine for the maintenance of guests of the church in his home.

During 1963 petitioner received a total of $13,474.83 from the church which he reported in a schedule attached to his return that was captioned "Wages, Salaries, Bonuses, Commissions," but he subtracted an identical amount therefrom as rental allowance, leaving a net income of zero. It is petitioner's position that he expended more than this amount in purchasing a new home, and that he therefore had no taxable income. The Commissioner contends, on the other hand, that petitioner made a net outlay of only $958.98 towards the purchase of the new residence, that he expended $2,183.24 for the maintenance of the two properties consecutively owned by him, and that he is entitled to a rental allowance of not to exceed the sum of these two amounts, namely, $3,142.22. We summarize below the facts out of which the opposing contentions arise.

Prior to August 1963, petitioners owned a home at 5906 Edmondson Avenue, Baltimore County, Md. On July 29, 1963, they purchased a residence located at 322 Lee Drive, Baltimore County, Md., for $18,500. They made a cash deposit of $500 on the property at the time of signing the contract of sale. At the settlement they received $407.81, leaving them with a net cash outlay of $92.19 at that time. The balance of the amount due the sellers of the property was provided by a 1-year mortgage loan of $19,000 which petitioners received from

the Carrollton Bank of Baltimore. The mortgage loan was secured by both the Lee Drive property and the Edmondson Avenue property.

In August 1963, petitioners sold their home at 5906 Edmondson Avenue for $16,600. Of this amount, $15,000 was withheld from them and paid over to the Carrollton Bank of Baltimore in partial satisfaction of the $19,000 mortgage loan. They also received cash payments on the sale consisting of a deposit of $1,500 from the purchaser and a balance of $133.21 due them at the settlement on August 12, 1963.

During 1963, petitioners made or caused to be made various payments totaling $17,500 on the $19,000 mortgage loan. These payments included the $15,000, $1,500, and $133.21 mentioned in the preceding paragraph which came from the proceeds of the sale of the Edmondson Avenue property, and $866.79 which had their source in other funds of petitioners. The latter amount, together with the $92.19 retained by the sellers of the Lee Drive property per settlement sheet, totaling $958.98, represent the cash expenditures made in 1963 by petitioners in acquiring the Lee Drive property which did not come from the proceeds of the sale of the Edmondson Avenue residence. It is this $958.98 plus $2,183.24 [1] expended by petitioners during 1963 in maintaining the old and new homes, or a total of $3,142.22, which the Commissioner approved as a "rental allowance." We hold that he properly refused to treat the remaining portion of the $13,474.83 received by petitioner as a rental allowance excludable from gross income.

The applicable provisions of section 107(2) first appeared in the law in the 1954 Code. Prior thereto, section 22(b)(6) of the 1939 Code provided as follows:

SEC. 22. GROSS INCOME.

(b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

\* \* \* \* \* \* \*

(6) MINISTERS.—The rental value of a dwelling house and appurtenances thereof furnished to a minister of the gospel as part of his compensation;

These provisions were thought to discriminate against those ministers who were not furnished with a parsonage but whose taxable compensation included amounts used for maintaining a house. Accordingly, in enacting the 1954 Code, Congress not only continued to provide that the rental value of a house furnished to a minister would not be included in gross income, but also added a further provision that a rental allowance paid to a minister as part of his compensation was

[1] Petitioners do not challenge the accuracy of this figure, nor did they present any evidence showing it to be incorrect. Accordingly, since the burden is upon them, we must accept it as correct.

excludable from gross income "to the extent used by him to rent or provide a home." Both provisions appear in section 107 which reads in its entirety as follows:

SEC. 107. RENTAL VALUE OF PARSONAGES.

In the case of a minister of the gospel, gross income does not include—
  (1) the rental value of a home furnished to him as part of his compensation; or
  (2) the rental allowance paid to him as part of his compensation, to the extent used by him to rent or provide a home.

Regulations promulgated under these provisions are set forth in the margin.[2]

The purpose of the new legislation was made clear by the congressional committees that proposed its enactment. Thus, the Senate Finance Committee stated (S. Rept. No. 1622, 83d Cong., 2d Sess., p. 16):

Under present law, the rental value of a home furnished a minister of the gospel as a part of his salary is not included in his gross income. This is unfair to those ministers who are not furnished a parsonage, but who receive larger salaries (which are taxable) to compensate them for expenses they incur in supplying their own home.

Both the House and your committee has removed the discrimination in existing law by providing that the present exclusion is to apply to rental allowances paid to ministers to the extent used by them to rent or provide a home.

See also H. Rept. No. 1337, 83d Cong., 2d Sess., p. 15. In *Abraham A. Salkov*, 46 T.C. 190, we noted that (p. 194): "Paragraph (2) of section 107 appeared first in the Internal Revenue Code of 1954 to clarify

---

[2] Sec. 1.107–1 Rental value of parsonages.

(a) In the case of a minister of the gospel, gross income does not include (1) the rental value of a home, including utilities, furnished to him as a part of his compensation, or (2) the rental allowance paid to him as part of his compensation to the extent such allowance is used by him to rent or otherwise provide a home. * * *

(b) For purposes of section 107, the term "home" means a dwelling place (including furnishings) and the appurtenances thereto, such as a garage. The term "rental allowance" means an amount paid to a minister to rent or otherwise provide a home if such amount is designated as rental allowance pursuant to official action taken prior to January 1, 1958, by the employing church or other qualified organization, or if such amount is designated as rental allowance pursuant to official action taken in advance of such payment by the employing church or other qualified organization when paid after December 31, 1957. The designation of an amount as rental allowance may be evidenced in an employment contract, in minutes of or in a resolution by a church or other qualified organization or in its budget, or in any other appropriate instrument evidencing such official action. The designation referred to in this paragraph is a sufficient designation if it permits a payment or a part thereof to be identified as a payment of rental allowance as distinguished from salary or other remuneration.

(c) A rental allowance must be included in the minister's gross income in the taxable year in which it is received, to the extent that such allowance is not used by him during such taxable year to rent or otherwise provide a home. Circumstances under which a rental allowance will be deemed to have been used to rent or provide a home will include cases in which the allowance is expended (1) for rent of a home, (2) for purchase of a home, and (3) for expenses directly related to providing a home. Expenses for food and servants are not considered for this purpose to be directly related to providing a home. Where the minister rents, purchases, or owns a farm or other business property in addition to a home, the portion of the rental allowance expended in connection with the farm or business property shall not be excluded from his gross income.

the discrepancy between rental allowances paid by congregations and residences actually furnished by them."

Plainly, the purpose of the new provision was to equalize the situation between those ministers who received a house rent free and those who were given an allowance that was actually used to provide a home. There certainly does not appear to be any intention to place ministers of the second category in a favored position. Yet, if petitioner were to prevail here, his entire compensation for 1963 would escape taxation, a result that seems clearly contrary to the underlying purpose of the statute. And the words of the statute itself explicitly preclude that result, for it provides that the rental allowance is excludable from a minister's gross income only "to the extent used by him to rent or provide a home." The circumstance that petitioner's entire compensation was artificially designated as a "rental allowance" pursuant to the statement signed by the board of trustees of the church cannot in fact convert into a rental allowance that which was plainly compensation for services, nor does it appear on this record that to the extent that the Commissioner refused to treat his compensation as an excludable rental allowance such compensation was actually "used by him to rent or provide a home."

On the facts before us petitioner did not use his entire 1963 compensation of $13,474.83 to rent or provide a home. True, he purchased a new residence in 1963 at a price which exceeded that amount. But the great bulk of that price was paid out of the proceeds of sale of petitioner's old residence. In addition to such proceeds, he paid a net aggregate of only $958.98 in purchasing the new home. The Commissioner has permitted him to treat as excludable rental allowance not only that amount but also an additional $2,183.24 expended in 1963 for the maintenance of both the old and new homes during that year. We are satisfied on this record that petitioner has failed to show that he is entitled to an excludable rental allowance greater than that approved by the Commissioner.

*Decision will be entered for the respondent.*