114 T.C. No. 23

UNITED STATES TAX COURT

RICHARD D. WARREN AND ELIZABETH K. WARREN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14924-98.                     Filed May 16, 2000.


        P is a minister of the gospel within the meaning
of sec. 107, I.R.C.  The church which employed him
designated most or all of his compensation as a housing
allowance during each of the taxable years in issue.
Ps used the allowance to provide a home for themselves
and their children.

        The amount they used to provide a home, and
exclude from income under sec. 107(2), I.R.C., was more
than the fair market rental value of their home.  R
contends that Ps' exclusion under sec. 107(2), I.R.C.,
may not exceed the lesser of the amount Ps used to
provide a home or the fair market rental value of their
home.

        <u>Held</u>:  The exclusion under sec. 107(2), I.R.C., is
limited to the amount used to provide a home, not the
fair market rental value of the home.

Arthur A. Oshiro, for petitioners.

T. Ian Russell, for respondent.


OPINION


COLVIN, Judge:  Respondent determined the following deficiencies and accuracy-related penalties with respect to petitioners' Federal income taxes for taxable years 1993, 1994, and 1995:

| Year | Deficiency | Sec. 6662(a) Penalty |
|------|-----------|----------------------|
| 1993 | $11,932 | $2,386 |
| 1994 | 18,061 | 3,612 |
| 1995 | 16,080 | 3,216 |

Petitioner is a minister of the gospel within the meaning of section 107.  After concessions, the sole issue for decision is whether the amount of petitioner's housing allowance compensation that is excludable from gross income under section 107(2) is limited to the amount used to provide a home, as petitioners contend, or to the lesser of that amount or the fair market rental value of the home, as respondent contends.  We hold that it is limited to the amount used to provide a home.

Unless otherwise indicated, section references are to sections of the Internal Revenue Code in effect for the years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.  References to petitioner are to Richard D. Warren.

This case was submitted fully stipulated under Rule 122.

## Background

### A. Petitioners

Petitioners are married and resided in Trabuco Canyon, California, when they filed their petition in this case. Petitioner is a minister with a bachelor of arts degree from California Baptist College, a master of divinity degree from Southwestern Theological Seminary, and a doctor of ministry degree from Fuller Theological Seminary.

In December 1992, petitioners bought a residence for $360,000. The annual fair market rental value of petitioners' residence was $58,061 in 1993, $58,004 in 1994, and $59,479 in 1995.

### B. Saddleback Valley Community Church

In 1980, petitioner founded the Saddleback Valley Community Church (the church) in his home. Over the years the church used many different facilities to house the congregation. The congregation had grown to more than 18,000 individuals by 1992, and it continued to grow thereafter.

During the years in issue, petitioner served as a duly ordained Baptist minister of the church. He also authored books entitled The Purpose Driven Church, The Power to Change Your Life, and Answers to Life's Difficult Questions, and he owned and operated a tape and book ministry called The Encouraging Word.

C.  Petitioner's Compensation From the Saddleback Valley
    Community Church

Each year, before the fiscal year began, the church's trustees met to designate the amount of compensation to be paid to each of its ministers.  The trustees also allocated these amounts between salary and housing allowances.  In 1992, the church adopted a fiscal year ending May 31.  For the short year from January 1 to May 31, 1993, petitioner received $42,496, all of which the trustees of the church designated as a housing allowance.  For the fiscal year ending May 31, 1994, the trustees approved compensation of $85,000 for petitioner and designated the full amount as a housing allowance.  For the fiscal year ending May 31, 1995, the trustees approved compensation of $100,000, all of which they designated as a housing allowance. For the fiscal year ending May 31, 1996, the trustees approved compensation of $100,000 and allocated $20,000 for salary and $80,000 for a housing allowance.

Petitioner received the following amounts from the church as compensation for the calendar years in issue:  $77,663 for 1993, $86,175 for 1994, and $99,653 for 1995.  Petitioners used $77,663 in 1993, $76,309 in 1994, and $84,278 in 1995 to provide a home for themselves and their children by paying expenses for mortgage, utilities, furnishings, landscaping, repairs, and maintenance and real property taxes and homeowner's insurance

premiums.[1]  Based on these expenditures, petitioners excluded from income on their 1993 return all of petitioner's compensation from the church and reported as income $9,866 in 1994 and $19,654 in 1995.

The amounts remaining in dispute are the differences between the rental values of petitioners' home and the amounts petitioners excluded from their returns.  The following table summarizes relevant financial information:

| Taxable year | Compensation received | Housing expenditures | Amount excluded from income | Rental value of home | Amount in dispute (i.e., amount excluded less rental value of home) |
|---|---|---|---|---|---|
| 1993 | $77,663 | $77,663 | $77,663 | $58,061 | $19,602 |
| 1994 | 86,175 | 76,309 | 76,309 | 58,004 | 18,305 |
| 1995 | 99,653 | 84,278 | 79,999 | 59,479 | 20,520 |

Petitioners reported that petitioner had net Schedule C, Profit and Loss From Business, income from his tape and book ministry of $183,635 in 1993, $217,770 in 1994, and $221,401 in 1995, and total income (not including the housing allowance paid by the church to the extent excluded by petitioners from their gross income) of $187,652 for 1993, $219,919 for 1994, and $241,238 for 1995.[2]

----

[1]  The parties stipulated that all of these expenditures were used to provide housing.

[2]  Although the record is silent as to why petitioners excluded only $79,999 when they spent $84,278 on housing for 1995, we infer that it was because the church designated an $80,000 housing allowance for the church's 1996 fiscal year.

## Discussion

### A.   Respondent's Contentions

Respondent contends that the exclusion under section 107(2) may not exceed the lesser of the amount used to provide a home or the fair market rental value of the home.  Respondent contends that permitting a greater exclusion in the reporting of compensation would be contrary to the "rental" language in the statute and also contrary to the concern for equality among ministers stated in the legislative history accompanying enactment of section 107(2) in 1954.  We disagree for reasons stated next.

### B.   Section 107

Compensation for services is generally included in gross income for purposes of calculating Federal income taxes.  See sec. 61(a)(1).  However, section 107 provides the following exception:

SEC. 107.  RENTAL VALUE OF PARSONAGES.

In the case of a minister of the gospel, gross income does not include--

(1) the rental value of a home furnished to him as part of his compensation; or

(2) the rental allowance paid to him as part of his compensation, to the extent used by him to rent or provide a home.

Contrary to respondent's position, neither section 107(2), the regulations promulgated thereunder, nor the related

legislative history, limits the amount that may be excluded from income as a parsonage allowance under section 107(2) to the fair market rental value of the residence occupied.  A rental allowance excludable under section 107(2) may be used (1) to rent a home, (2) to purchase a home, and (3) to pay expenses directly related to providing a home.  See sec. 1.107-1(c), Income Tax Regs.  Section 107(1) limits the exclusion to the rental value of a home furnished as part of a minister's compensation.  In contrast, no fair rental value limit is stated in section 107(2) or the regulations issued thereunder.

We have previously held that, under section 107(2), the fair rental value of a minister's home is not excludable to the extent that it exceeds the amount the minister uses to provide housing.  See Reed v. Commissioner, 82 T.C. 208, 214 (1984).  In Reed, we were not required, and thus declined, to decide the issue here; i.e., whether the exclusion under section 107(2) is limited to the lesser of fair rental value or the amount used for housing.  See id.  We said:

> The trouble with petitioners' analysis is that the Congress, faced with the "rental value" language of section 107(1), did not choose to use such language in section 107(2).  Instead, the Congress provided that the exclusion applies to "the rental allowance paid * * *, to the extent used by [the minister] to rent or provide a home."  (Emphasis added.)  Thus, the Congress clearly provided a different measure for the exclusion under section 107(2) than the measure provided under section 107(1).  Petitioners have failed to show us a policy problem so overwhelming as to force us to

conclude that the Congress could not have meant what it said. * * * [Id. at 213.]

Our reasoning in Reed also applies to the instant case.

C.  Respondent's Arguments Based on Statutory Text

Respondent contends that the title of section 107, "RENTAL VALUE OF PARSONAGES", shows that Congress intended to impose a rental value limit under section 107(2).  We disagree.  It is well settled that the heading of a section does not limit the plain meaning of the text.  See Brotherhood of Railroad Trainmen v. Baltimore & O.R. Co., 331 U.S. 519, 528-529 (1947); Stanley Works v. Commissioner, 87 T.C. 389, 419 (1986).

Respondent contends that to not impose a fair rental value limit requires that we disregard the word "rental" in section 107(2).  We disagree.  Section 107(2) clearly is not limited to payment of rent; on the contrary, it expressly applies to a rental allowance "to the extent used * * * to rent or provide a home." (Emphasis added.)  This includes home purchases.  See sec. 1.107-1(c), Income Tax Regs.[3]

---

[3]  The dissent contends that the effect of our interpretation of sec. 107(2) is to read the term "rental" out of sec. 107(2).  See dissent, infra pp. 16-17.  We disagree, and we believe our reading gives full effect to all of the words in sec. 107(2). First, sec. 107(2) specifically excludes not only the cost of renting a home, but also the cost of providing a home. Second, sec. 107(2) does not include language used in sec. 107(1) that limits the amount of the sec. 107(2) exclusion to the rental value of the residence; instead, sec. 107(2) requires that the amount excluded be a rental allowance paid as compensation to the minister and used by him or her to rent or provide a home.

The church designated all of petitioner's compensation as a housing allowance for its fiscal years ending May 31, 1994, and May 31, 1995, and 80 percent for its fiscal year ending May 31, 1996. Respondent contends that the language in section 107(2) that excludes from income a rental allowance paid to a minister "as part of his compensation" shows that Congress intended not to allow an exclusion of all of a minister's salary. We disagree. Respondent's reading suggests that the "part of his compensation" language in section 107(2) requires that, to be excludable under section 107(2), any "part" of a minister's compensation may be designated as a rental allowance so long as less than "all" is so designated. Under that interpretation, a taxpayer could qualify under section 107(2) if, for example, the amount designated as a rental allowance were $1.00 less than the minister's total compensation. This reading is not specifically indicated by the legislative history or required by the regulations. It seems unlikely that such a tiny difference in amounts should control whether section 107(2) applies.

The "part of his compensation" language also appears in section 107(1). Thus, under respondent's reading, no exclusion would be available to a minister to whom a church provided a home but no other compensation because the home would be all of that minister's compensation. We do not think Congress intended to require ministers living under those circumstances to pay tax on

the value of their church-provided housing, and we do not believe
the phrase "part of his compensation" in section 107(1) and
section 107(2) has that effect. Instead, we give full meaning to
the words of the statute when we read section 107(1) and section
107(2) to require simply that the source of the funds be the
minister's compensation.[4]

Where a statute plainly authorizes an exclusion from income,
as here, we require "unequivocal evidence of legislative purpose
before construing the statute so as to override the plain meaning
of the words used therein." Zinniel v. Commissioner, 89 T.C.

---

[4] In Rev. Rul. 71-280, 1971-2 C.B. 92, a minister bought a
home, making a downpayment and mortgage payments in excess of the
amount of his annual compensation as a minister. The
Commissioner ruled that the taxpayer's exclusion under sec.
107(2) is limited to the fair rental value of a house, including
furnishings, appurtenances thereto such as a garage, and
utilities. Despite this, we apparently have never so held, nor
have we held that the "part of his compensation" language in sec.
107(2) bars exclusion of all of a minister's compensation. In
Deason v. Commissioner, 41 T.C. 465 (1964), the taxpayer received
$1,300 compensation as a minister both in 1959 and 1960, and used
more than those amounts to provide his own home. The
Commissioner apparently did not challenge the taxpayer's
exclusion of 100 percent of his pay. Cf. Marine v. Commissioner,
47 T.C. 609 (1967), where a taxpayer who received $13,000
compensation as a minister, sold a house and used the proceeds to
buy another house. As a result of his use of the proceeds of the
sale of the first house to buy the second house, we found that he
"used" only $3,142.22 of his $13,000 compensation for housing.
In dicta, we noted that if the taxpayer were to prevail in Marine
v. Commissioner, supra, "his entire compensation * * * would
escape taxation, a result that seems clearly contrary to the
statute." Id. at 613. We found that the taxpayer's entire
salary was artificially designated as a rental allowance, and
limited him to an exclusion of the actual amount ($3,142.22) used
by him to rent or provide a home.

357, 363-364 (1987); <u>Huntsberry v. Commissioner</u>, 83 T.C. 742, 747-748 (1984). Congress chose not to include the "rental value" limit in section 107(2). We do not read section 107(2) to provide otherwise.

D.   <u>Unequal Treatment Theory</u>

Respondent contends that respondent's position prevents unequal treatment between ministers for whom housing is provided and excluded under section 107(1) on one hand, and ministers who receive a rental allowance excluded under section 107(2) on the other. Respondent relies on legislative history accompanying enactment of section 107(2) in 1954. In explaining why section 107(2) was added in 1954, the tax-writing committees explained that the then-existing law, i.e., what is now section 107(1)[5]--

> is unfair to those ministers who are not furnished a parsonage, but who receive larger salaries (which are taxable) to compensate them for expenses they incur in supplying their own home.  * * *  [The new provision] has removed the discrimination in existing law by providing that the present exclusion is to apply to rental allowances paid to ministers to the extent used by them to rent or provide a home.

H. Rept. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 15 (1954); S. Rept. 1622, to accompany H.R. 8300 (Pub.

---

[5]   In <u>Reed v. Commissioner</u>, 82 T.C. 203, 213 (1984), we noted that the predecessors of sec. 107(1) date back to 1921. See sec. 213(b)(11) of the Revenue Act of 1921, ch. 136, 42 Stat. 227, 239; sec. 22(b)(8) of the Revenue Act of 1928, ch. 852, 45 Stat. 791, 798; sec. 22(b)(6) of the Revenue Act of 1932, ch. 209, 47 Stat. 169, 179; sec. 22(b)(6), I.R.C. 1939, 53 Stat. 1, 10.

L. 591), 83d Cong., 2d Sess. 16 (1954).

Respondent contends that the section 107(2) requirement that the rental allowance be used by the minister to rent or provide a home (use limitation) and the rental value limitation at issue here must both apply under section 107(2) to ensure that section 107 applies equally to all ministers.  We disagree.  We have not previously construed section 107(1) and section 107(2) to require identical treatment of ministers eligible under those two subsections, nor does respondent's position eliminate unequal treatment.  In Reed v. Commissioner, 82 T.C. at 214, we held that the excess of the rental value of a home over the amount used to provide it is not excludable under section 107(2).  Thus, we treated ministers who receive a housing allowance differently-- and worse in some respects--than ministers for whom housing is provided under section 107(1).  That is, a minister eligible for the exclusion under section 107(1) may exclude the full rental value of a home even if the rental value of the home exceeds the amount used to provide it, but, under Reed, a minister eligible for the exclusion under section 107(2) may not.

If we adopt respondent's position, ministers eligible for an exclusion under section 107(2) will face a compliance burden not imposed on ministers eligible under section 107(1). Under respondent's position, ministers who receive a rental allowance could be required to obtain an estimate of the rental value of their home every year in order to know how much to exclude under section 107(2). This burden is not imposed on ministers for whom homes are provided, the rental value of which is excludable under section 107(1), because they may simply exclude the value of the home without any need to estimate the rental value. In the instant case, the parties stipulated the rental value for each year. However, the burden of obtaining valuation estimates could become onerous where rental value is in dispute. We decline to endorse this disparate treatment here by imposing potentially burdensome valuation obligations where neither the statute nor the legislative history so requires.

There may be concern that, under section 107(2), a minister might exclude from income the cost of an expensive home. However, respondent does not contend that petitioner's home was improperly expensive. In any event, a more expensive home presumably would have a greater rental value which presumably would be excludable under respondent's approach. There may also be concern that a minister with additional income from another source could spend more for housing, and thus have a larger

section 107 exclusion, than a minister without additional income. We are aware of no authority to justify our consideration of this point in construing section 107(2).[6]

E.   Conclusion

For the foregoing reasons, we hold that the exclusion from gross income for a designated parsonage allowance is not limited to the lesser of the fair market rental value of the home or the amount used to provide a home.

To reflect the foregoing,

Decision will be entered

under Rule 155.

Reviewed by the Court.

CHABOT, PARR, WELLS, WHALEN, HALPERN, BEGHE, CHIECHI, LARO, FOLEY, VASQUEZ, GALE, THORNTON, and MARVEL, JJ., agree with this majority opinion.

---

[6]  The dissent asserts that the majority is sanctioning abuse and that this case is an archetypical example of abuse. We recognize that the fact that petitioner has income from a Schedule C activity enables him to spend more for housing.  The same financial flexibility would be available to a minister who has investment income or who is married to a spouse that earns a separate income.  Despite the dissent's concerns, there are no special limits in sec. 107(2) providing for those situations. Concern over those issues does not, contrary to the urging of the dissent, justify our adding a fair rental value limit to sec. 107(2).

NIMS, J., dissenting:  I respectfully dissent.  The facts of this case present an archetypical example of the potential for abuse now sanctioned by the majority.  For the first 3 of its 4 fiscal periods here involved, the Saddleback Valley Community Church designated 100 percent of petitioner's compensation as a housing allowance.  Yet petitioners, with other income (largely Schedule C income) near or in excess of $200,000 for each of the taxable years at issue, are nevertheless awarded an exclusion from tax of substantially all of petitioner's salary.  (The parties stipulated that the rental value of petitioner's residence, in all relevant taxable years, was an amount that was a great deal less than petitioner's salary in those years.)

Moreover, with funds available from the above-mentioned alternative sources to cover living expenses otherwise necessary but unrelated to providing a home, petitioners were at liberty to, and did, spend nearly all compensation for the betterment of their residence.  Contrary to the majority, I am satisfied that the rental allowance of section 107(2) was not intended to operate in this manner.  I believe that both the statutory language and the legislative history counsel a different result, and I disagree with the majority's reading of these sources.

As regards the statutory text, section 107(2) excludes from a minister's income "the rental allowance paid to him as part of his compensation, to the extent used by him to rent or provide a home."  (Emphasis added.)  The majority's interpretation,

however, disregards "rental" as a modifier of "allowance" and thereby renders superfluous a portion of the statute. While the majority correctly emphasizes that section 107(2) is applicable to a rental allowance used for payment either of rent or of other expenses and purchases involved in providing a home, the majority fails to address the requirement that the funds so used must, as a threshold matter, qualify as the equivalent of a <u>rental</u> allowance. The statute does not simply say that an allowance, or even a housing allowance or a residence allowance, used to provide a home may be excluded. Rather, the law states that gross income does not include a rental allowance so used. The majority's interpretation effectively writes this term out of section 107(2).

I am convinced that the choice and use of "rental" as a modifier indicates that Congress envisioned an exclusion with a correlation to rental value. I further believe that the title of section 107, "RENTAL VALUE OF PARSONAGES", offers additional support for this conclusion. I do not dispute that, as the majority observes, a section heading cannot limit the plain meaning of the text, but here the title serves to reiterate the importance and purpose of a word expressly included in the provision.

I also feel that the reference in the text of section 107(2) to the rental allowance as "part" of the minister's compensation is instructive. No one would seriously contend that the phrase

creates a bright-line rule, subject to manipulation by designating all but a pittance of the minister's salary as a rental allowance, a straw man constructed by the majority and therefore easily demolished. Nonetheless, I believe that the words evidence the manner in which Congress envisaged that the statute would typically operate. If rental value limits the section 107(2) exclusion, it follows that a rental allowance would in the usual case generally constitute only part of a minister's compensation.

Moreover, legislative history states unambiguously that concerns of fairness and removing discrimination between ministers furnished a home and those provided proportionally larger salaries instigated the development of section 107(2). See S. Rept. 1622, 83d Cong., 2d Sess. 16 (1954); H. Rept. 1337, 83d Cong., 2d Sess. 15 (1954). This Court, too, has opined:

> Plainly, the purpose of the new provision was to equalize the situation between those ministers who received a house rent free and those who were given an allowance that was actually used to provide a home. There certainly does not appear to be any intention to place ministers of the second category in a favored position. * * * [Marine v. Commissioner, 47 T.C. 609, 613 (1967).]

Nothing about the majority's open-handed generosity to the favored few, exemplified by petitioners in the instant case, is consistent with this wise pronouncement.

Although the majority points to a rental value limitation as placing a compliance burden on ministers or churches utilizing

section 107(2), I do not feel that requiring a valuation or appraisal is unduly burdensome in light of the significant tax benefit obtained in return, but unavailable to all nonclerical taxpayers.  Such a prerequisite is hardly unusual in tax law.  Nor do I believe that it affords sufficient reason to ignore Congress' expressed intent to strive toward fairness.

Lastly, I note that a rental value limitation is not inconsistent with the language from our opinion in Reed v. Commissioner, 82 T.C. 208, 213 (1984), quoted by the majority, which stresses that "Congress clearly provided a different measure for the exclusion under section 107(2) than the measure provided under section 107(1)."  A minister seeking treatment under section 107(2) is subject to the distinct requirement that the funds excluded actually be used to provide a home, regardless of whether an additional rental value limit is imposed.  Only by imposing such a limit, however, can all terms of the statutory text, as well as the intentions expressed in legislative history, be given meaning and effect.

Therefore, I would hold that the exclusion from gross income for a designated parsonage allowance under section 107(2) is limited to the lesser of the fair rental value of the home or the amount used to provide a home.

COHEN and RUWE, JJ., agree with this dissenting opinion.