PHILIP A. DRISCOLL AND LYNNE B. DRISCOLL, A.K.A. DONNA
L. DRISCOLL, PETITIONERS *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 1070–07.        Filed December 14, 2010.

During each of the years at issue, an organization exempt
from tax under sec. 501(a), I.R.C., paid to petitioner husband,
an ordained minister, a so-called parsonage allowance that he
used to provide a principal home and a second home. For each
of their taxable years at issue, petitioners (Ps) excluded from
gross income under sec. 107, I.R.C., the parsonage allowance.
R determined to include in Ps' gross income for each of those
years the portion of that allowance with respect to a second
home. *Held*: Ps are entitled to exclude from gross income
under sec. 107, I.R.C., the portion of the parsonage allowance
with respect to a second home.

*Paula M. Junghans*, for petitioners.
*Eric B. Jorgensen*, for respondent.

OPINION

CHIECHI, *Judge*: Respondent determined the following deficiencies in, and fraud penalties under section 6663(a)[1] on, petitioners' Federal income tax (tax):

| Year | Deficiency | Fraud penalty under sec. 6663(a) |
|------|-----------|----------------------------------|
| 1996 | $64,905 | $48,678.75 |
| 1997 | 83,512 | 62,634.00 |
| 1998 | 107,562 | 80,671.59 |
| 1999 | 149,880 | 112,410.00 |

The only issue remaining for decision is whether petitioners are entitled for each of their taxable years 1996 through 1999 to exclude from gross income under section 107 the amount that an organization exempt from tax under section 501(a) paid to petitioner Philip A. Driscoll during each of those years with respect to a second home that petitioners owned. We hold that they are.

*Background*

All of the facts in this case, which the parties submitted under Rule 122, have been stipulated by the parties and are so found.

Petitioners resided in Georgia at the time they filed the petition in this case.

During each of the years 1996 through 1999, petitioner Philip A. Driscoll (Mr. Driscoll) was an ordained minister who worked for Mighty Horn Ministries, Inc., later known as Phil Driscoll Ministries, Inc. (We shall refer to Mighty Horn Ministries, Inc., later known as Phil Driscoll Ministries, Inc., as the Ministries.) During each of those years, the Ministries was an organization described in section 501(c)(3) and exempt from tax under section 501(a).

During each of the years 1996 through 1999, petitioners owned more than one residence or home; they owned a principal residence or home in Cleveland, Tennessee (Cleveland home), and a second residence or home at the Parksville Lake Summer Home area of the Cherokee National Forest in

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

Lake Ocoee (lake second home), near Cleveland, Tennessee. Petitioners owned one lake second home from January 1996 through April 1998, which they sold in April 1998, and another lake second home from April 1998 through 1999.[2] During the years 1996 through 1999, petitioners used their Cleveland home solely as a residence and their lake second home solely as a residence. At no time during those years did petitioners use their Cleveland home or their lake second home for any commercial purposes, such as rental purposes.

For each of the years at issue, the Ministries filed Form 990, Return of Organization Exempt From Income Tax, in which it claimed an amount described as "parsonage allowance" (Ministries parsonage allowance). That amount represented the total amount that the Ministries paid during each of those years with respect to petitioners' Cleveland home and their lake second home for the acquisition and maintenance of those homes, including mortgage payments, utilities, furnishings, improvements, and maintenance, such as lawn care, painting, and repairs.

In the tax return that petitioners filed for each of the years 1996 through 1999, they did not include the Ministries parsonage allowance in gross income.

Respondent issued a notice of deficiency (notice) to petitioners for their taxable years 1996 through 1999. In that notice, respondent determined, inter alia, that petitioners are not entitled for any of those years to exclude from gross income under section 107 the portion of the Ministries parsonage allowance that the Ministries paid during each of those years with respect to petitioners' lake second home.[3]

---

[2] Petitioners thus owned two second homes at different times during 1998. That fact is not material to our resolution of the issue presented. For convenience, we shall refer herein in the singular to a lake second home or petitioners' lake second home even when discussing 1998.

[3] Respondent did not determine to include in gross income for any of petitioners' taxable years 1996 through 1999 the portion of the Ministries parsonage allowance that the Ministries paid during each of those years with respect to petitioners' Cleveland home. As a result, respondent did not determine to include the following amounts in petitioners' gross income for the years indicated:

| Year | Portion of Ministries parsonage allowance with respect to Cleveland home |
|------|---------------------------------|
| 1996 | $78,469 |
| 1997 | 42,708 |
| 1998 | 71,704 |
| 1999 | 87,254 |

As a result, respondent further determined in the notice to include the following amounts in petitioners' gross income for the years indicated:

| Year | Portion of Ministries parsonage allowance with respect to lake second home |
|------|---------------------------------------------------------------------------|
| 1996 | $25,842.53 |
| 1997 | 70,707.50 |
| 1998 | 116,309.11 |
| 1999 | 195,778.52 |

## Discussion

Petitioners bear the burden of proving that the determinations in the notice that remain at issue are erroneous. See Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). That the parties submitted this case fully stipulated does not change that burden or the effect of a failure of proof. See Rule 122(b); *Borchers v. Commissioner*, 95 T.C. 82, 91 (1990), affd. 943 F.2d 22 (8th Cir. 1991).

We must decide an issue of first impression, namely, whether petitioners are entitled for each of the years at issue to exclude from gross income under section 107 the portion of the Ministries parsonage allowance that the Ministries paid to Mr. Driscoll during each of those years with respect to a second home of petitioners (i.e., their lake second home).

Section 107 provides:

SEC. 107. RENTAL VALUE OF PARSONAGES.

In the case of a minister of the gospel, gross income does not include—
   (1) the rental value of a home furnished to him as part of his compensation; or
   (2) the rental allowance paid to him as part of his compensation, to the extent used by him to rent or provide a home.

In support of their position that they are entitled for each of the years at issue to exclude from gross income under section 107 the portion of the Ministries parsonage allowance with respect to their lake second home, petitioners argue:

The only limitation expressed by Congress in section 107 was that amounts excluded from gross income under Section 107 be used to provide a property used as a dwelling place by the minister. Respondent has stipulated that the properties at issue (i.e., the second homes of petitioners) in each year in this case were so used, and that the amounts in issue were

expended in connection with the acquisition and maintenance of those properties. Accordingly, there is no basis under the statute to require Petitioners to include the amounts related to the second homes in their gross income.

In support of respondent's position that petitioners are not entitled for each of the years at issue to exclude from gross income under section 107 the portion of the Ministries parsonage allowance with respect to their lake second home, respondent argues that section 107

allowed[4] a minister one parsonage allowance for a home. I.R.C. § 107 does not allow a minister a second parsonage allowance for any additional homes. * * *

An exclusion from gross income first appeared in section 213(b)(11) of the Revenue Act of 1921, ch. 136, 42 Stat. 239, for the "rental value of a dwelling house and appurtenances thereof furnished to a minister of the gospel as part of his compensation". As respondent concedes, the rationale for the exclusion from gross income in section 213(b)(11) of the Revenue Act of 1921 of the so-called parsonage allowance[5] is "obscure".[6] The identical provision appeared in, inter alia, section 22(b)(8) of the Revenue Act of 1928, ch. 852, 45 Stat. 798, section 22(b)(6) of the Revenue Act of 1932, ch. 209, 47 Stat. 179, and section 22(b)(6) of the Internal Revenue Code of 1939, ch. 2, 53 Stat. 10.

Congress reenacted as section 107(1) of the Internal Revenue Code of 1954 (1954 Code) the excludible parsonage allowance as it appeared in the tax law before Congress

---

[4] Respondent uses the past tense in describing sec. 107 because, effective for taxable years after the taxable years at issue, Congress amended sec. 107(2) by limiting the rental allowance excludible under that section to an amount not exceeding the fair rental value of a home of a minister. Congress appears to have made that amendment in response to the Court's holding in *Warren v. Commissioner*, 114 T.C. 343 (2000). See *infra* note 16.

[5] For convenience, we shall sometimes refer to the allowance that is, or was, excludible from gross income under sec. 107 and its predecessors as the excludible parsonage allowance.

[6] According to respondent,

The Senate Committee Report does not mention the provision [sec. 213(b)(11) of the Revenue Act of 1921], and the House Conference Report indicates only that the House accepted the Senate version with an amendment making an unspecified "clerical change." See S. Rep. No. 275 at 14 (1921); H.R. Conf. Rep. No. 486 at 23 (1921). One commentator has suggested that the in-kind exclusion grew out of "the general respect held by Congress and the public for churches," as well as "Congress's tendency to benefit favored entities." * * * In 1921, there was no generally available exclusion for employer-provided housing, and a minister receiving housing from his current church clearly would not have been eligible for the deduction under Section 214(a) of the 1921 Revenue Act for traveling expenses, including lodging, "while away from home in the pursuit of a trade or business." 42 Stat. at 239.

enacted that Code, except Congress changed the phrase "a dwelling house and appurtenances thereof" to the phrase "a home". Internal Revenue Code of 1954, ch. 736, 68A Stat. 32. In changing the phrase "a dwelling house and appurtenances thereof" to the phrase "a home", Congress did not intend any change in the law. [7]

When Congress enacted the 1954 Code, it also expanded the excludible parsonage allowance in section 107(2) of that Code to include the payment of a "rental allowance paid to him [the minister] as part of his compensation, to the extent used by him to rent or provide a home." *Id.* Congress expanded the excludible parsonage allowance in section 107(2) of the 1954 Code to remove "the discrimination in existing law by providing that the present exclusion is to apply to rental allowances paid to ministers to the extent used by them to rent or provide a home." [8] H. Rept. 1337, 83d Cong., 2d Sess. 15 (1954); S. Rept. 1622, 83d Cong., 2d Sess. 16 (1954).

In expanding the excludible parsonage allowance in section 107(2) of the 1954 Code in order to exclude a rental allowance paid to a minister as part of his compensation, Congress wanted to ensure that the term "home" did not extend to a situation where a minister, in addition to a home, rents, purchases, or owns a farm or other business property. To accomplish that objective, Congress added at the end of section 107(2) the phrase "to the extent used by him to rent or provide a home." [9] That phrase precludes the exclusion from

---

[7] When it enacted sec. 107, Congress stated in pertinent part:

The word "home" as used in both paragraphs [sec. 107(1) and (2)] is not intended to change the law under section 22(b)(6) of the code [sic] of 1939 which used the term "dwelling house and appurtenances thereof."

H. Rept. 1337, 83d Cong., 2d Sess. A35 (1954); S. Rept. 1622, 83d Cong., 2d Sess. 186 (1954).
[8] Congress described "the discrimination in existing law" as follows:

Under present law, the rental value of a home furnished a minister of the gospel as a part of his salary is not included in his gross income. This is unfair to those ministers who are not furnished a parsonage, but who receive larger salaries (which are taxable) to compensate them for expenses they incur in supplying their own home.

H. Rept. 1337, *supra* at 15; S. Rept. 1622, *supra* at 16.
[9] Congress explained the phrase "to the extent used by him to rent or provide a home" that it added at the end of sec. 107(2) as follows:

The term "home" includes the case where furnishings are also included. It does not cover cases where a minister, in addition to the home, rents a farm or business property, except to the extent that the total rental paid can be allocated to the home itself and the necessary appurtenances thereto, such as a garage.

H. Rept. 1337, *supra* at A35; S. Rept. 1662, *supra* at 186.

gross income of any portion of a rental allowance paid to a minister that is expended in connection with a farm or other business property. See sec. 1.107–1(c), Income Tax Regs. [10]

Respondent acknowledges that petitioners' second residence in Lake Ocoee is a home of petitioners, albeit a second home. [11] Nonetheless, respondent argues that the Ministries parsonage allowance with respect to that home is not excludible under section 107. That is because, according to respondent, section 107, which uses the phrase "a home", and its legislative history [12] and the regulations under section 107, [13] which also use the phrase "a home", limit a minister's

---

[10] Sec. 1.107–1(c), Income Tax Regs., provides in pertinent part:

Where the minister rents, purchases, or owns a farm or other business property in addition to a home, the portion of the rental allowance expended in connection with the farm or business property shall not be excluded from his gross income.

[11] Respondent acknowledges throughout respondent's briefs that petitioners' residence in Lake Ocoee is a home of Mr. Driscoll, albeit a second home, since he had another home or residence, i.e., his principal home or residence, in Cleveland, Tennessee. For example, respondent asserts on brief:

petitioners are not entitled to exclude from income on their federal income tax returns as a parsonage allowance amounts paid to or on behalf of Driscoll by Ministries for any second homes, "lake houses" on Lake Ocoee, during their taxable years 1996, 1997, 1998, and 1999 under I.R.C. § 107.

\* \* \* \* \* \* \*

*Under I.R.C. § 107, Driscoll, as an ordained minister, is not entitled to exclude from income as a parsonage allowance amounts paid by Ministries for his second homes, "lake houses," on Lake Ocoee, during the petitioners' taxable years 1996, 1997, 1998, and 1999.*

\* \* \* \* \* \* \*

\* \* \* petitioners excluded from income as a parsonage allowance amounts paid to or on behalf of Driscoll for second homes, "lake houses" on Lake Ocoee, by Ministries \* \* \*.

Respondent, as do petitioners, uses the plural "second homes" on brief because petitioners owned two second homes at different times during 1998, one of the taxable years at issue. See *supra* note 2.

[12] See H. Rept. 1337, *supra*; S. Rept. 1622, *supra*. Respondent's reliance to support respondent's position as to the meaning of the phrase "a home" in sec. 107 on the legislative history of that section, which Congress made law when it enacted the 1954 Code, is puzzling. That is because (1) respondent concedes that the rationale for the original enactment of the excludible parsonage allowance in sec. 213(b)(11) of the Revenue Act of 1921 is "obscure" and (2) Congress did not intend any change in the law when it changed the phrase "a dwelling house and appurtenances thereof" used in the tax law before the 1954 Code to the phrase "a home" used in that Code, see *supra* note 7.

[13] Sec. 1.107–1, Income Tax Regs., provides in pertinent part:

Rental value of parsonages.—(a) In the case of a minister of the gospel, gross income does not include (1) the rental value of a home, including utilities, furnished to him as a part of his compensation, or (2) the rental allowance paid to him as part of his compensation to the extent such allowance is used by him to rent or otherwise provide a home. \* \* \*

(b) For purposes of section 107, the term "home" means a dwelling place (including furnishings) and the appurtenances thereto, such as a garage. The term "rental allowance" means an amount paid to a minister to rent or otherwise provide a home \* \* \*

(c) A rental allowance must be included in the minister's gross income in the taxable year

Continued

excludible parsonage allowance to a single home and do not allow such an allowance for a second home such as petitioners' lake second home. It is respondent's view that, because section 107, its legislative history, and the regulations under section 107 "refer in the singular to 'a home,' rather than 'homes' in the plural", a minister is entitled to have an excludible parsonage allowance for only one home. [14] We disagree.

Respondent is substituting in section 107, its legislative history, and the regulations under section 107 the phrase "a single home" or the phrase "one home" for the phrase "a home" that appears in the statute and the other authorities on which respondent relies. [15] We find nothing in section 107,

_____

in which it is received, to the extent that such allowance is not used by him during such taxable year to rent or otherwise provide a home. Circumstances under which a rental allowance will be deemed to have been used to rent or provide a home will include cases in which the allowance is expended (1) for rent of a home, (2) for purchase of a home, and (3) for expenses directly related to providing a home. Expenses for food and servants are not considered for this purpose to be directly related to providing a home. Where the minister rents, purchases, or owns a farm or other business property in addition to a home, the portion of the rental allowance expended in connection with the farm or business property shall not be excluded from his gross income.

[14] On brief, respondent expressly abandons any argument that the phrase "a home" used in sec. 107 means "principal residence". Respondent states:

Petitioners mistakenly allege that respondent's position is that "a home" as used in the statute [sec. 107] means "principal residence," * * *

Respondent has not defined home as used in I.R.C. § 107 as specifically the home which constitutes a principal residence under other Code sections nor has he ever made such an argument.

On brief, respondent also expressly abandons any argument that the phrase "away from home" in sec. 162(a) has any bearing on resolving the issue presented under sec. 107. Respondent states:

Petitioners then quote from *Brandl v. Commissioner*, 513 F.2d 697, 699 (6th Cir. 1975) "because of the almost infinite variety of factual situations involved, the courts have not formulated a concrete definition of the term 'home' capable of universal application." This case [*Brandl v. Commissioner*] is inapposite to the facts herein because it involves the meaning of "tax home" under I.R.C. § 162 for purposes of deducting traveling expenses, such as meals and lodging by salesmen who travel and stay overnight from their "tax home" which can be their principal place of business in some situations.

[15] On brief, respondent also asserts:

Respondent maintains that the legislative history and regulations allow a minister to exclude from income the payments from a religious organization for the home—the dwelling place—where the minister lives. In the case of the petitioners, they may own and visit recreational lake houses or other houses, but their home where they live is 345 Davis Trail NW, Cleveland, TN. [petitioners' Cleveland home].

Respondent's assertion that petitioners "may own and visit * * * [their second residence in Lake Ocoee], but their home where they live is" their principal residence in Cleveland, Tennessee, flies in the face of not only respondent's acknowledgment throughout respondent's briefs that petitioners' second residence in Lake Ocoee is their second home, see *supra* note 11, but also the parties' stipulations of fact. Respondent and petitioners stipulated (1) that petitioners owned a residence in Cleveland, Tennessee, which was petitioners' principal residence, and a residence in Lake Ocoee, which was petitioners' second residence, and (2) that "Each of these

its legislative history, or the regulations under section 107, which, as respondent points out, all use the phrase "a home", that allows, let alone requires, respondent, or us, to rewrite that phrase in section 107.[16] We are not persuaded by those authorities that Congress intended to allow, let alone did allow, in section 107 an excludible parsonage allowance only for a single home or one home of a minister.[17] Indeed, section 7701(m)(1) rejects respondent's position that the phrase "a home" in section 107 means a "single home" or "one home". Section 7701(m)(1) provides:

> SEC. 7701(m). CROSS REFERENCES.—
>   (1) OTHER DEFINITIONS.—
>     For other definitions, see the following sections of Title 1 of the United States Code:
>       (1) Singular as including plural, section 1.

---

properties was used solely as a personal residence". The term "residence" is defined in Webster's Third New International Dictionary (Unabridged) 1931 (2002) to include:

1 a: the act or fact of abiding or dwelling in a place for some time: an act of making one's home in a place * * * b: the act or fact of living or regularly staying at or in some place either in or as a qualification for the discharge of a duty or the enjoyment of a benefit * * * 2 a (1): the place where one actually lives or has his home as distinguished from his technical domicile (2): a temporary or permanent dwelling place, abode, or habitation to which one intends to return as distinguished from a place of temporary sojourn or transient visit (3): a domiciliary place of abode * * * 4 a: a building used as a home: DWELLING * * *

Thus, respondent and petitioners stipulated that each of petitioners' residences (i.e., their principal residence and their second residence) was a, albeit not the only, "dwelling place—where the minister [Mr. Driscoll] live[d]."

[16] In support of respondent's position as to the meaning of the phrase "a home" in sec. 107, respondent also relies on the "rule that exclusions from gross income under I.R.C. § 61(a) are narrowly construed in favor of taxation." Respondent therefore asserts that "'a home' should be narrowly construed in favor of taxation and treated as singular". The rule on which respondent relies does not necessarily or automatically require holding against a taxpayer who claims an exclusion from gross income. For example, in *Warren v. Commissioner*, 114 T.C. 343 (2000), a Court-reviewed opinion, members of the Court disagreed over the meaning of the phrase "rental allowance" in sec. 107(2) where the parsonage allowance that was provided to a minister as most or all of his compensation and that he used to provide a home was more than the "fair market rental value" of the home. Nonetheless, the Court did not invoke the rule on which respondent relies (i.e., "exclusions from gross income * * * are narrowly construed in favor of taxation") to hold against the taxpayers in *Warren*. Instead, the Court, with dissents, allowed the taxpayers to exclude from gross income under sec. 107(2) the parsonage allowance that the minister received and that he used to provide a home, even though that allowance exceeded the "fair market rental value" of the home. The rule on which respondent relies has no more application here than it did in *Warren*. Here, sec. 107 uses the phrase "a home". Respondent wants to change that phrase to read "a single home" or "one home". The rule on which respondent relies does not trump the language that Congress used in sec. 107.

[17] We have consistently required "unequivocal" evidence of legislative purpose before construing a section of the Code in a manner that would override the plain meaning of the words used in the section. See, e.g., *Warren v. Commissioner*, *supra* at 349; *Zinniel v. Commissioner*, 89 T.C. 357, 363–364 (1987).

Section 1 of Title 1 of the United States Code in turn provides:

In determining the meaning of any Act of Congress, unless the context indicates otherwise—

  words importing the singular include and apply to several persons, parties, or things; * * *

As pertinent here, section 107 requires only that amounts paid as part of a minister's compensation be used to rent or provide a home, i.e., a dwelling house of the minister, in order to be excluded from the minister's gross income. See sec. 107(2). In the present case, during each of the years at issue, the Ministries paid Mr. Driscoll as part of his compensation the Ministries parsonage allowance which he used to provide for himself a home or a dwelling house in Cleveland, Tennessee (i.e., petitioners' Cleveland home), and a home or a dwelling house in Lake Ocoee (i.e., petitioners' lake second home). Those facts satisfy the requirements in section 107(2) for the exclusion from gross income of the portion of the Ministries parsonage allowance with respect to petitioners' lake second home. [18]

We hold that the portion of the Ministries parsonage allowance that the Ministries paid to Mr. Driscoll as part of his compensation during each of the years at issue and that he used during each of those years to provide for himself a lake second home satisfies the requirements in section 107(2) that an allowance be paid to him as part of his compensation and be used to provide a home. Accordingly, we hold that petitioners are entitled for each of the taxable years at issue to exclude from gross income under section 107 the Ministries parsonage allowance with respect to their lake second home.

We have considered all the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot. [19]

---

[18] Respondent does not dispute that petitioners are entitled to exclude from gross income under sec. 107 the portion of the Ministries parsonage allowance with respect to their Cleveland home. See *supra* note 3.

[19] We shall address briefly respondent's concern that holding for petitioners in the instant case will "open the door to an unlimited number of residential properties being treated as parsonages for one minister." Respondent is speculating about cases that are not before us. We decline to do so. We have decided on the basis of the facts that the parties stipulated and the respective arguments that they advance only the issue presented to us in this case.

To reflect the foregoing and petitioners' concessions in the stipulation of settled issues,

*Decision will be entered under Rule 155.*

Reviewed by the Court.

WELLS, THORNTON, HOLMES, and PARIS, *JJ*., agree with this majority opinion.

MORRISON, *J*., concurs in the result only.

MARVEL, *J*., did not participate in the consideration of this opinion.

---

WHERRY, *J*., concurring: I agree with the majority opinion but write separately to emphasize the limited factual record on which this case was decided.

As noted in the majority opinion the word "home" in section 107 should, after application of section 7701(m), be read to mean home or home*s*. See *Kislev Partners, L.P. ex rel. Bahar v. United States*, 84 Fed. Cl. 385, 389 (2008).

For many years courts have interpreted statutory provisions in accordance with their common meaning. " 'The legislature must be presumed to use words in their known and ordinary signification.' * * * 'The popular or received import of words furnishes the general rule for the interpretation of public laws.' " *Old Colony R.R. Co. v. Commissioner*, 284 U.S. 552, 560 (1932) (citations omitted). Consequently, I respectfully reject my dissenting colleagues' view that "a home" is ambiguous and that two homes, which they acknowledge is not impossible, should not be permitted here because " 'exclusions from income must be narrowly construed.' " Dissenting op. p. 569.

By design of the parties, this case was submitted for decision under Rule 122. The result, when combined with the parties' briefs, is a very narrow question posited for our decision. That question is whether section 107(2) covers only one home or both homes.

That question was effectively resolved when the parties stipulated that

6. The parsonage allowance paid by the Ministry covered the following properties:

a. During all of the years at issue, a residence at 345 Davis Trail NW, Cleveland, Tennessee that constituted the principal residence of Mr. Driscoll and his family.

b. A second residence at the Parksville Lake Summer Home area of the Cherokee National Forest, Lake Oconee, near Cleveland, Tennessee. There were two properties owned during this period, one from January, 1996 through April, 1998, which was sold in April, 1998, and a second one from April, 1998, through December 31, 1999; and

8. Each of these properties was used solely as a personal residence and not for any commercial purposes. None of the properties was rented.

Thus, the majority's answer here is that it may cover more than one home. [1]

Necessarily absent from our consideration of this case are important regulatory considerations which were not fully addressed in the stipulation or on brief. See section 1.107–1(a), Income Tax Regs., which specifies that "In order to qualify for the exclusion, the home or rental allowance must be provided as remuneration for services which are ordinarily the duties of a minister of the gospel. In general, the rules provided in § 1.1402(c)–5 will be applicable to such determination." This consideration necessarily involves factual questions of why the remuneration was provided and whether it was reasonable compensation and may indirectly raise issues of private benefit and personal inurement, none of which were considered here. See *Orange Cnty. Agric. Socy., Inc. v. Commissioner*, 893 F.2d 529 (2d Cir. 1990), affg. T.C. Memo. 1988–380; *W. Catholic Church v. Commissioner*, 73 T.C. 196 (1979), affd. without published opinion 631 F.2d 736 (7th Cir. 1980); *Church of Gospel Ministry, Inc. v. United States*, 640 F. Supp. 96 (D.D.C. 1986), affd. without published opinion 830 F.2d 1188 (D.C. Cir. 1987). Thus, my vote in this case is predicated on its limited facts and the specific issue raised.

THORNTON and HOLMES, *JJ.*, agree with this concurring opinion.

———————

[1] To persons living in densely populated areas this may seem anomalous. But in the sparsely populated rural West and Alaska, a minister of the gospel may serve a congregation covering a geographic area considerably larger than the State of Rhode Island. In such a situation, the minister may well need more than one home, particularly in mountainous areas with sometimes severe winter weather.

GUSTAFSON, *J.*, dissenting: I would hold, in favor of the IRS, that section 107(2) does not exclude from income a parsonage allowance for two residences.

I. *Exclusions from income must be narrowly construed.*

Section 107(2) provides that gross income does not include a minister's "rental allowance * * * to the extent used by him to rent or provide *a home*." (Emphasis added.) Mr. Driscoll invokes this provision to exclude an allowance that he used to provide *two homes* for himself. This interpretation of section 107(2) is not impossible; but it is, at best, no more likely than the interpretation that one properly excludes a rental allowance only to the extent it is used to provide *one home*. Therefore, since the most that can be said for Mr. Driscoll's position is that section 107(2) is ambiguous, I believe this case is simply decided by reference to the rule "'that exclusions from income must be narrowly construed.'" *Commissioner v. Schleier*, 515 U.S. 323, 328 (1995) (quoting *United States v. Burke*, 504 U.S. 229, 248 (1992) (Souter, J., concurring)). If we adopt the narrower construction, then we must hold against Mr. Driscoll and in favor of the IRS.

II. *The IRS's interpretation of section 107(2) is more likely.*

In addition to the mere fact that the indefinite article "a" and the word "home" are both singular,[1] there are two features of section 107(2) that indicate it excludes from income only an allowance for one residence:

A. *A person has one "home".*

In common usage, a person has one "home",[2] and the word therefore has a connotation of singularity. The majority evi-

---

[1] The statute's use of a singular article and noun is not decisive of this question for the reason that Mr. Driscoll argues and that the majority stresses, majority op. p. 566: "unless the context indicates otherwise * * * words importing the singular include and apply to several * * * things". 1 U.S.C. sec. 1 (2006) ("the Dictionary Act"). However, by its terms this provision applies only "unless the context indicates otherwise"; and section 107(2) is hardly an instance "Where the intent of Congress seems clear but is frustrated by the use of the singular in the statutory wording." *Fields v. Commissioner*, 189 F.2d 950, 952 (2d Cir. 1951), affg. 14 T.C. 1202 (1950). Thus, I consider the singular character of the phrase "a home" to be some indication of the congressional intent.

[2] The leading (non-obsolete) definition of "home" in the *Oxford English Dictionary* (1933) is "A dwelling-place, house, abode; the fixed residence of a family or household; the seat of domestic life and interests; one's own house; the dwelling in which one habitually lives, or which one regards as one's proper abode"; and the first definition for "home" in Webster's Third New Inter-

Continued

dently discounts this connotation because the 1954 Congress that replaced the prior "a dwelling house and appurtenances thereof" with "a home" stated that it intended no substantive change.[3] That Congress, however, used the word "home" in its description of then-present law:

Under present law, the rental value of *a home* furnished a minister of the gospel as a part of his salary is not included in his gross income.

H. Rept. 1337, 83d Cong., 2d Sess. 15 (1954) (emphasis added); see also S. Rept. 1622, 83d Cong., 2d Sess. 16 (1954). Thus, Congress manifestly thought in 1954 that the allowance had always been for a "home", and the connotations of the word "home" therefore properly inform our understanding of what Congress intended when it provided an exclusion for an allowance used to provide "a home". By excluding an allowance for a "home", the statute has connoted at least since 1954 that an allowance for only one residence is excluded.

In this vein, the IRS contends (in its reply brief at 3–4 (emphasis added)):

[T]he legislative history and regulations allow a minister to exclude from income the payments from a religious organization for the home—the dwelling place—*where the minister lives*. In the case of the petitioners, they may own and visit recreational lake houses or other houses, but *their home where they live* is [the stipulated principal residence].

I find no concession or contradiction of this contention when the IRS's opening brief refers to Mr. Driscoll's other residence as a "second *home*". That phrase—like "summer home", "vacation home", and "home away from home"—presumes the existence of a prior "home" that is one's habitual dwelling. The phrase "second home" refers instead to a secondary residence that is *not* one's actual "home".

B. *An allowance is excluded only "to the extent used \* \* \* to \* \* \* provide a home."*

However many "homes" or "second homes" a minister may have, he can use only one of them at a time. If a minister were to use an allowance to provide a principal residence for

national Dictionary (1966) is "the house and grounds with their appurtenances habitually occupied by a family : one's principal place of residence : DOMICILE".

[3] See majority op. p. 562 & note 7 (citing H. Rept. 1337, 83d Cong., 2d Sess. A35 (1954); S. Rept. 1622, 83d Cong., 2d Sess. 186 (1954)).

himself and were to use a second allowance to pay for a second house that he never occupied, the exclusion of section 107(2) would be manifestly inapplicable to the second allowance because it was not ever "used * * * to * * * provide a home." That second allowance did not "provide [him] a home" if he did not ever live at the residence for which it paid.

On the other hand, if a minister were to split his year between two "homes" in both of which he *did* live (but only part time), it could be said that the allowances given for each of those residences *did* "provide a home" for part of the year. However, those allowances would be excluded (as the statute says) only "*to the extent* used by him to * * * provide a home." (Emphasis added.) To the extent that a minister uses an allowance to pay the rent of the house he is actually inhabiting, he is using the allowance to "provide a home." But to the extent he makes his "home" elsewhere and uses an allowance to pay the rent on an empty house, he is not using the allowance to "provide a home."

The "to the extent" limitation in section 107 assures that a minister can exclude an allowance from income only to the extent he uses it to "provide a home"—i.e., a house where he actually lives. If a minister divides his year between two homes paid for by two allowances, then a portion of each may be excluded from income. In this case the record provides no information on the quantum of Mr. Driscoll's use of the two residences. The IRS did not disallow any of the exclusion of the allowance for Mr. Driscoll's principal residence, and Mr. Driscoll did not argue for any allocation that might have been more favorable. Mr. Driscoll therefore used the full extent of the section 107 allowance on his principal residence.

III. *Exclusion of multiple parsonage allowances would serve no evident legislative purpose.*

The majority states that the original congressional rationale for the parsonage exclusion in 1921 is "obscure". Majority op. p. 561. This is hardly a warrant for interpreting the provision broadly to exclude multiple allowances for houses unoccupied for some or all of the year. It is impossible to substantiate, and difficult even to imagine, a congressional

motive to extend the exclusion of section 107 to a second residence, or a third, or a fourth.

The majority asserts that it approves today only the exclusion of an allowance on a *second* residence; and the majority brushes aside, as "speculat[ion] about cases that are not before us", the IRS's expressed concern about "'an unlimited number of residential properties being treated as parsonages for one minister.'" Majority op. note 19. However, there is nothing in Mr. Driscoll's argument or the majority's reasoning that would support any distinction between a "second home" and a "third home". The majority decides today that, if a property is a dwelling house, then it is a "home" for which an allowance is excludable, no matter the number of "homes" a minister may claim.

It is true that there are scenarios in which a minister may work in (and therefore reside in) several ministry locations. For example, a minister may be an itinerant evangelist; another minister in a sparsely populated area may serve multiple congregations that are distant from each other; and another minister may have seasonal duties in different locations. A narrow interpretation of section 107 might work to their disadvantage. However, in addition to the parsonage allowance under section 107, the Code also includes section 119 (which excludes lodging on the employer's premises for the employer's convenience)[4] and section 162(a)(2) (which allows a deduction for traveling expenses "while away from home").[5] Taken together, sections 119, 162(a)(2), and 107 (construed to exclude only a single parsonage allowance) would address many of these multiple-ministry scenarios. If there is an argument to be made that these Code provisions make inadequate provision for some of these scenarios, it is an argument that was not made here and thus is not before us. The record includes no suggestion of ministry undertaken

---

[4] If a minister who maintains his section 107 home in one location is required to be away from home, the value of his stay in a rectory or "prophet's chamber" on church premises may be excludable under section 119.

[5] The minister who is required to be temporarily away from home and to pay for a hotel or other temporary housing may be entitled to deduct that expense under section 162(a)(2). He is temporarily away from his home; but it remains his "home"; and the rent he pays on that home is spent to "provide a home" from which he is only temporarily absent. However, if a minister changes his location and then inhabits a dwelling that now becomes truly his "home" for purposes of section 107, then in that new location he is not "away from home" for purposes of section 162(a)(2). He can exclude under section 107 any allowance for the expense of the new home, and he cannot deduct that expense under section 162.

at two locations; and instead the parties stipulated that Mr. Driscoll's principal residence was in Cleveland, Tennessee, and that his second home was "near Cleveland, Tennessee".

The chance that Congress in 1954 thought it was permitting the exclusion of multiple parsonage allowances seems remote. There is therefore no reason not to apply the general rule that exclusions are construed narrowly. I would apply that general rule here and hold that section 107(2) excludes only an allowance used to provide the single home where the minister actually resides.

COLVIN, HALPERN, GALE, GOEKE, and KROUPA, *JJ*., agree with this dissent.